## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ZIMMER SURGICAL, INC., and
DORNOCH MEDICAL SYSTEMS. INC.,   :
                                      :
            Plaintiffs,     :
                                        :
        v.                  :    C. A. No. 16-679-RGA-MPT
                                        :
STRYKER CORPORATION and
STRYKER SALES CORPORATION,   :
                                      :
            Defendants.    :

## <u>REPORT AND RECOMMENDATION</u>

## I.    INTRODUCTION

On August 8, 2016 Zimmer Surgical, Inc. ("Zimmer") and Dornoch Medical

Systems, Inc. ("Dornoch") [hereinafter referred to as "Plaintiffs"] filed this action against

Defendants, Stryker Corporation ("Stryker") and Stryker Sales Corporation ("Striker

Sales") [hereinafter referred to as "Defendants"], alleging infringement of U.S. Patent

No. RE44,920 (the "'920 Reissue Patent"), titled "High Volume Liquid Waste Collection

and Disposal System."[1]  Plaintiffs seek the following:  a declaration and final judgment

that Defendants infringe the '920 Reissue Patent under 35 U.S.C. § 271(a), (b), and/or

(c), and a final judgment incorporating the same; an injunction for said infringement; an

injunction for contributory infringement and inducement to infringe; a declaration or

order finding willful infringement; an award of damages, including enhanced damages

pursuant to 35 U.S.C. § 284; and a judgment that this is an exceptional case under 35

---

[1] D.I. 1.

U.S.C. § 285, warranting recovery for Plaintiffs' reasonable attorney fees, costs, and expenses.[2]

Pending before this court is Defendants' motion to dismiss the complaint in its entirety for failure to state a claim of direct infringement, indirect infringement, willful infringement and/or infringement of specific dependant claims pursuant to FED. R. CIV. P. 12(b)(6).[3]  This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a),[4] and jurisdiction over all parties because they have availed themselves of Delaware corporate law.[5]  Venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b).[6] This Report and Recommendation is issued pursuant to 28 U.S.C. §§ 636(b)(1)(B); FED. R. CIV. P. 72(b)(1); D DEL. LR 72.1.[7]  For the reasons stated below, it is recommended that Defendants motion to dismiss be granted in part and denied in part.

## II.    BACKGROUND

### A.    Parties

Zimmer is a Delaware corporation with a principle place of business located in

---

[2] D. I. 1 at 11-12.

[3] D. I. 8; D.I. 10 at 1.

[4] *See* 28 U.S.C. § 1331 (federal question jurisdiction); § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . .").

[5] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (finding personal jurisdiction where the defendant "availed himself of the benefits and protections" of the forum's laws).

[6] 28 U.S.C. § 1391(c) ("[A]n entity . . . , whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action . . . ."); § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

[7] 28 U.S.C. §§ 636(b)(1)(B); FED. R. CIV. P. 72(b)(1); D DEL. LR 72.1.

Dover, Ohio.[8]  Zimmer is a research and design manufacturer of customizable surgical and operating room solutions.[9]  Dornoch is an Illinois corporation with its principle place of business in Riverside, Missouri.[10]  It specializes in designing and manufacturing fluid waste management solutions for operating room environments.[11]

Plaintiffs have a business relationship, as Zimmer is the exclusive licensee of the '920 Patent, which Dornoch obtained as an assignee.[12]  Thus, Zimmer holds the exclusive right to manufacture, use, sell, offer for sale, and import all consumables and accessories covered by the '920 Reissue Patent.[13]

Defendants Stryker and Stryker Sales are interrelated Michigan corporations, having their principle place of business in Kalamazoo Michigan.[14]  Defendants, together, also research, design, manufacture, and sell products used to manage medical wastes.[15]

### B.    Patents-in Suit

#### 1.    Plaintiffs' System

The '920 Reissue Patent was obtained by Dornoch under 35 U.S.C. § 251.[16]  It is a reissued version of the 420 Patent.[17]  Among the fluid waste management solutions that Dornoch designed and manufactured and is allegedly covered by the patent is the

---

[8] D.I. 1 at ¶ 2.
[9] *Id.*
[10] *Id.* at ¶ 3.
[11] *Id.*
[12] *Id.* at ¶¶ 2-3.
[13] *Id.* at ¶ 12.
[14] D. I. 1 at ¶¶ 4-5.
[15] D. I. 10 at 4.
[16] D.I. 12 at ¶ 2.
[17] D.I. 10 at 5.

3

"Transposal® Ultra*fleX* Fluid Waste Management System" [hereinafter referred to as "Ultra*fleX*"], which "simplifies fluid collection in operating rooms by safely using on-board regulated suction and class-leading fluid capacity."[18]  Ultra*fleX* utilizes "fluid carts, associated 'Ultra Evac Station' fluid disposal units, and 'consumables,'" such as "single-use canister lids, single-use cart manifolds, manual IV poles, powered IV poles, smoke filters, specimen traps, and clot busters."[19]

Dornoch manufactures and sells the Ultra*fleX* fluid carts and associated Ultra Evac Station fluid disposal units, while Zimmer makes and exclusively distributes the consumables used with the fluid carts.[20]

### 2.    Defendants' System

Defendants' original patented system related to this suit was released in 2000.[21] The Neptune 2 Waste Management System [hereinafter referred to as "Neptune 2"], is a refined version of the original system and was released in 2007.[22]  In 2016, the Neptune 3 Waste Management System [hereinafter referred to as "Neptune 3"] was released.[23] Both parties agree that there are no differences in the Neptune 2 and Neptune 3 systems relevant to this action.[24]  Plaintiffs' claims are based upon the Neptune system in both currently used versions, Neptune 2 and Neptune 3.

---

[18] D.I. 1 at ¶ 3; *see also* D.I. 1 at ¶¶ 15-29.
[19] *Id.* at ¶ 3.
[20] *Id.*
[21] D.I. 10 at 5.
[22] *Id.*
[23] *Id.*
[24] *Id.*

4

Neptune 2 and Neptune 3 include a rover, a computerized mobile unit used by physicians and medical staff.[25]  The rover can interact with a separate docking station and "the units allow for controlled suction and collection of fluid waste and surgical smoke."[26]  After waste is collected in the rover, it can be connected to a separate docking station where the waste is emptied and the rover is flushed.[27]  This process utilizes consumables, such as manifolds, filters, smoke tubing, detergent, and quick trap specimen collectors.[28]  The rover, docking station, and consumables allegedly infringe on Plaintiffs' '920 Reissue Patent based on their similarities with the Ultra*Flex* system components.[29]

### D.    Position of the Parties

Plaintiffs contend that Defendants have been infringing, contributing to the infringement of, and/or actively inducing others to infringe on the claims of Plaintiffs' '920 Reissue Patent in this jurisdiction and elsewhere in the United States.[30]

Plaintiffs argue that Defendants have committed the following:  (1) direct infringement of the patent due to Defendants making, using, selling, importing, and/or offering for sale of both the Neptune 2 and Neptune 3 systems in the United States; (2) indirect infringement by inducing and/or contributing to third parties' alleged infringement by directing, promoting, and encouraging the use of Defendants' systems; (3) infringement upon the patent's dependent claims (17-23, 25-28, 30, 32-38, 40, and

---

[25] D.I. 10 at 5.
[26] *Id.*
[27] *Id.*
[28] D.I. 12 at 7.
[29] D.I. 1 at ¶¶ 14-21.
[30] *Id.*

41) by allowing the Neptune systems to meet every limitation of at least independent claims 15 and 29, upon which the dependent claims are based; and (4) willful and deliberate infringement because Defendant knew or should have known of the '920 Reissue Patent's subject matter.[31]

Defendants counter that no infringement occurred, and Plaintiffs fail to meet the pleading standards required by Rule 8 of the Federal Rules of Civil Procedure, and the United States Supreme Court decisions in *Iqbal* and *Twombly*.[32]  Specifically, they argue the following:  (1) that there is no adequate identification of the accused products or basis to provide any plausible theory of direct infringement; (2) that indirect infringement is conclusively alleged and lacks a plausible theory of knowledge or specific intent to infringe; (3) that the complaint fails to relate any feature of the '920 Reissue Patent's dependant claims to a feature of a Stryker system or product with any of the limitations of the asserted dependent claims, as is necessary to support an infringement theory; and (4) that the allegations of willful infringement lack sufficient facts to support this claim.[33]

Defendants support their arguments by pointing to parallel facts - that Plaintiffs "had"[34] waste management products in the early 2000s and obtained specific patents by 2011, yet none were initially asserted against Defendants.[35]  Defendants ask the court to infer that, because no infringement arose prior to the issuance of the '920 Reissue

---

[31] D.I. 1 at ¶¶ 9-13.
[32] D.I. 10 at 1.
[33] *Id.*
[34] D.I. 10 at 5.
[35] *Id.*

Patent, the present claims of infringement could only be based upon new matter in the '920 Reissue Patent that was not part of Plaintiffs' prior patents.[36]  Thus, no infringement could now be asserted against them.

Moreover, Defendants argue that, due to the insufficiency of the pleadings, the complaint leaves Defendants without adequate notice to respond, or as to why Plaintiffs' complaint could potentially be successful.[37]

## III.  STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) governs a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[38]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[39]  A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[40]  While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions,"

---

[36] D. I. 10 at 5.

[37] *Id.* at 4.

[38] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[39] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[40] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

and "legal conclusions."[41]

To survive a motion to dismiss, a plaintiff's factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[42]  Plaintiffs are therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[43]  Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[44]  A claim has facial plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[45]  Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[46]  Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public

---

[41] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

[42] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[43] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[44] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[45] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[46] *Twombly*, 550 U.S. at 563 (citations omitted).

record when reviewing a motion to dismiss.[47]

## IV.    DISCUSSION

### A.    Whether Plaintiffs allegations are sufficient

Whether the '920 Reissue Patent[48] includes new matter is not to be addressed at this stage of the pleadings.  "The court is not prepared to engage in a claim construction exercise at this stage of the proceedings . . . [t]he court may address with the parties an early claim construction of dispositive limitations, once a full and fair exchange of fundamental documents has been accomplished."[49]  Regardless, Plaintiffs meet the pleading standards required by Rule 8, *Iqbal*, and *Twombly*.  Plaintiffs did not merely plead legal conclusions based upon implausible theories, as Defendants assert.

---

[47] *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[48] A reissue essentially entails a re-prosecution of all claims.  35 U.S.C. § 251 provides that:

> Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent and, in accordance with a new and amended application, for the unexpired part of the term of the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.  No new matter shall be introduced into the application for reissue. . . .
>
> No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.  35 U.S.C. § 251.

[49] *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 563 (D. Del. 2012).

### 1.    Direct infringement

"A plaintiff may have a plausible claim for direct infringement 'sufficient to withstand *Iqbal*/*Twombly* scrutiny' by 'specifically identifying . . . products' which 'perform the same unique function as [the] patented system.'"[50]  This court, in *DermaFocus*, found the plaintiff's claim for direct infringement sufficiently pled where it included allegations that the defendant's system was used for "non-invasive lifting and tightening of the skin using focused ultrasound technology," and independent claim 1 of the patent claimed a "method of rejuvenating human skin" "comprising" "focusing ultrasound energy in a dermis layer of the region of skin."[51]

Here, Plaintiffs argue that Defendants directly infringe the '920 Reissue Patent by making, using, selling, importing, and/or offering for sale the Neptune 2 and Neptune 3 systems.[52]  Plaintiffs provide sufficient information to meet the *Iqbal/Twombly* standard similar to the plaintiff in *DermaFocus*.  They allege that the Neptune systems meet every limitation of at least independent claims 15 and 19 of the patent.[53]  Plaintiffs contend that the Neptune systems are "intended to be used in the operating room, pathology, surgical centers, and doctor's offices to collect and dispose of surgical fluid waste as well as collect smoke generated from electrocautery or laser devices."[54]  Additionally, they state the Neptune systems' rover, docking station, and consumables

---

[50] *DermaFocus LLC v. Ulthera, Inc.*, 15-654-SLR, 2016 WL 4263122, at *3 (D. Del. Aug. 11, 2016) (*quoting Robern, Inc. v. Glasscrafters, Inc.*, Civ. No. A. 16–1815, 2016 WL 3951726, at *4 (D.N.J. July 22, 2016)).

[51] *DermaFocus* at *3.

[52] D.I. 1 at ¶ 9.

[53] *Id.* at ¶¶ 14-30.

[54] *Id.* at ¶ 15.

are used for the same purposes as the components of the '920 Reissue Patent's system, Ultra*fleX*.[55] Plaintiffs describe Ultra*fleX* in detail, specifically identifying the product and its components.[56] They also describe the components of the Neptune systems in similar detail, with diagrams of the systems' components, demonstrating the similarities between the Neptune systems and Ultra*fleX*.[57]

Plaintiffs provide further support by alleging that Defendants' following actions demonstrate infringement: maintaining offices or facilities where Defendants conduct product system research and development activities for the Neptune systems; giving demonstrations of the systems at annual trade shows in the United States; testing the systems at Defendants' facilities and facilities of third-party end users; and providing "Installation, Operation, and Maintenance Guide" manuals, as well as advertising training sessions to end users of the Neptune systems.[58]

Defendants argue that there is no adequate identification of the accused products or sufficient basis to provide any plausible theory of direct infringement.[59] They urge the court to find Plaintiffs' definition of the accused products impermissibly vague.[60] Specifically, they contend that the allegedly infringing "consumables" have not been identified, but rather, that Plaintiffs "[cast] a cloud on Stryker's entire product line."[61] As explained previously, Plaintiffs allege sufficient information to meet the

---

[55] D.I. 1 at ¶¶ 16-20.

[56] *Id.* at ¶ 3.

[57] *Id.* at ¶¶ 15-21.

[58] *Id.* at ¶¶ 21-29.

[59] D.I. 10 at 1.

[60] *Id.* at 15.

[61] *Id.*

*Iqbal/Twombly* standard  Thus, Defendants' motion to dismiss the claim for direct infringement should be denied.

### 2.    Indirect Infringement

To sufficiently state a claim for either contributory infringement or induced infringement, Plaintiffs must allege that Defendants had "actual," knowledge of the matter infringed upon.[62]  Determining whether actual knowledge is sufficiently pled is the first prong of the two-prong test for indirect infringement.

Here, Plaintiffs allege that Defendants had the requisite knowledge of the '920 Reissue Patent during two different time periods, prior to and after the filing of the complaint.[63]  Plaintiffs do not plead "actual" knowledge, prior to service of the complaint; they only plead "constructive" knowledge.  Therefore, Plaintiffs' claims must be assessed according to the time period of alleged knowledge.

### a.    *Prior to the Complaint*

In *Monec*, this court found the plaintiff's allegation, that mobile telephone providers "participated in the same market" as the patent owner, insufficient to allege that the providers had the requisite actual knowledge.[64]  The court stated, "it is well-established that mere knowledge of one patent in a patent family . . . does not establish actual knowledge of a different patent in that family. . . ."[65]

_____

[62] *Id.* at 8; *See Chalumeau Power Sys. LLC v. Alcatel Lucent*, Civ. A. No. 11-1175 RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012).

[63] D.I. 1 at ¶¶ 25-26.

[64] *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225. 229 (D. Del. 2012).

[65] D.I. 10 at 9; *Monec* 897 F. Supp. 2d. at 229.

With respect to whether Defendants had the requisite knowledge of the patent itself prior to filing of the complaint, Plaintiffs theorize that Defendants knew, or should have known, of the '920 Reissue Patent's existence since the parties are competitors in the two-competitor field of manufacturing and selling waste management systems.[66]  In support, Plaintiffs present evidence of Defendants' Patent No. 7,621,898, which explicitly refers to the '420 Patent.[67]  In other words, Plaintiffs argue that Defendants' reference to Plaintiffs' older patent in Defendants' own patent demonstrates that Defendants knew or should have known of the matter in the '920 Reissue Patent.

Defendants urge that Plaintiffs' "competitor theory" cannot infer the requisite actual knowledge.[68]  Further, Defendants argue that they did not have (and could not plausibly have had) knowledge of the subject matter of the '920 Reissue Patent if it contained new matter.[69]

The court agrees that the competitor theory fails because Plaintiffs have not pled actual knowledge.  Similar to the finding in *Monec*, Defendants' reference to the '420 Patent is insufficient to infer the requisite knowledge of the '920 Reissue Patent.  Plaintiffs' contention is analogous to that of the plaintiff in *Monec*, who attempted (unsuccessfully) to establish that mere knowledge of one patent in a patent family is sufficient for actual knowledge of another patent in the same family.

In light of these findings, the court need not assess the second prong of indirect infringement, whether induced or contributory, for that time period.

---

[66] D.I. 1 at ¶ 26.
[67] *Id.*
[68] D.I. 13 at 1.
[69] D.I. 10 at 9.

### b (i).    After Filing the Complaint - Inducement

Under 35 U.S.C.A. § 271(b), to sufficiently plead inducement of patent infringement, a claimant must demonstrate that the alleged infringer had knowledge, of the patent and the allegedly infringing nature of the asserted conduct.[70]  As this court found in *Fairchild*:

> If a complaint sufficiently identifies, for purposes of [the] rule governing notice pleading, the patent at issue and the allegedly infringing conduct, a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies requirement of proof of knowledge that the induced acts constitute patent infringement.[71]

Plaintiffs contend that even if Defendants did not have pre-suit knowledge of the '920 Reissue Patent, they gained such knowledge through the complaint.[72]  This allegation is sufficient under *Fairchild*.  Therefore, the first-prong for indirect infringement is met.

"To demonstrate inducement of patent infringement, patentee must establish, first, that there has been direct infringement, and, second, that alleged infringer had knowledge that induced acts constitute patent infringement."[73]  "Inducement of patent infringement requires evidence of culpable conduct, directed to encouraging another's infringement."[74]

---

[70] 35 U.S.C.A. § 271(b).

[71] *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 775 (D. Del. 2013).

[72] D.I. 1 at ¶ 28.

[73] *Walker Digital* (*quoting* Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011); 35 U.S.C.A. § 271(b).

[74] *Walker Digital* (*quoting DSU Medical Corp. v. J.M.S. Co., Ltd.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part)).

To adequately plead induced infringement, Plaintiffs must allege that Defendants had knowledge, not only of the '920 Reissue Patent, but also of the infringing conduct by third parties. Plaintiffs filed the complaint on August 8, 2016. As this court acknowledged in *Fairchild*, receipt of the complaint and a defendant's decision to continue its conduct thereafter, despite information in the complaint, satisfies the knowledge element for inducement.[75] This analysis of the knowledge requirement was reiterated in *Raindance*, where the court found, "for indirect infringement, Defendant's knowledge of the patents is established at least of the filing of the lawsuit."[76] Therefore, Plaintiffs sufficiently allege actual knowledge as of August 8, 2016.

As a result, Defendants' motion to dismiss the claim for indirect infringement in the inducement, should be granted as it relates their conduct prior to filing of the complaint. However, it should be denied regarding their conduct after filing of the complaint.

### b (ii).  After Filing Complaint - Contributory Infringement

Under 35 U.S.C. § 271(c), a claimant of contributory infringement must demonstrate the following: the alleged contributory infringer has sold, offered to sell, or imported into the United States, a component of an infringing product; and the infringer knows "the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use."[77]

---

[75] *Fairchild*, 935 F. Supp. 2d at 777.
[76] *Raindance Techs., Inc. v. 10x Genomics, Inc.*, Civ. A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016).
[77] *Walker Digital*, 852 F. Supp. 2d at 566.

This court found, in *Walker Digital*,

> Patentee's allegations that on-line retailers were aware of its patents . . . that infringing apparatuses comprised software or hardware and software that provided their customers ability to receive benefit in connection with purchase via cross-promotion, and that their products were not staple articles or commodities of commerce suitable for substantial noninfringing use were sufficient to state contributory patent infringement claims.[78]

The element being met is undisputed – Defendants admittedly sold, offered to sell, or imported components of allegedly infringing products - the Neptune 2 and Neptune 3 systems.

Defendants' receipt of the complaint and their decision to continue the alleged infringing conduct, is sufficient to meet the elements of contributory infringement and to demonstrate requisite knowledge. Thus, Plaintiffs plead sufficient facts under the contributory infringement standard, as it relates to Defendants' conduct after filing of the complaint.

In conclusion, Defendants' motion to dismiss the claim for contributory infringement should be granted regarding their conduct prior to filing of the complaint, but denied for their acts post-filing of the complaint.

### 3.    Infringement of Dependent Claims

This court previously noted in *Carrier* that under 35 U.S.C.A. § 271(a), "[i]f an accused product does not infringe an independent patent claim, it also does not infringe any claim depending thereon."[79] However, "[o]ne may infringe an independent patent

---

[78] *Id.*
[79] *Carrier Corp. v. Goodman Glob., Inc.*, 64 F. Supp. 3d 602, 611 (D. Del. 2014).

16

claim and not infringe a claim dependent on that claim."[80]  Defendants seek dismissal for infringement of dependent claims separately from the independent claims.

Defendants argue that Plaintiffs do not allege sufficient factual matter to state a claim for relief for the dependent claims of the '920 Reissue Patent.[81]  They cite *Raindance*, commenting that "Plaintiffs make 'no attempt to relate any of their factual assertions with any of the asserted claims,'"[82] and merely conclude infringement of the dependent claims in the absence of specific factual bases.  Plaintiffs note, however, that the *Raindance* court  "did not address whether the complaint had to detail infringement of dependent claims, in addition to an independent claim, or of more than one claim in a patent."[83]

In *Raindance*, this court assessed whether the plaintiff's allegations of indirect infringement were sufficient under the *Iqbal/Twombly* standard where the complaint was merely a "collection of factual assertions" based on the defendant's website, rather than being derived from the plaintiff's actual assessment of the defendant's product.[84]  The court held the plaintiff did not plausibly allege indirect infringement on specific claims of the patent.[85]  The court, however, did not directly address the required specificity to alleging infringement of dependent claims as opposed to independent claims.

---

[80] *Id.*
[81] D.I. 10 at 19.
[82] *Id.*; *Raindance*, 2016 WL 927143, at *2.
[83] D.I. 12 at 7.
[84] *Raindance*, 2016 WL 927143 at *2.
[85] *Id.* at 3*.

17

Plaintiffs maintain they are entitled to relief if they prove through discovery that Defendants infringe upon at least one claim of the patent-in-suit.[86]  Citing the Federal Circuit in *Grober*, they state, "[t]his court's precedent is clear:  a patent is infringed if a single claim is infringed."[87]  Plaintiffs argue that the complaint need not identify all claims infringed at the outset of the case.[88]  They further contend that the pleadings need not list which products infringe on which specific claims:  rather "setting forth a fact-based, element-by-element analysis of claims 15 and 29 . . ." is sufficient to encompass the dependent claims.[89]

Determining whether infringement of the dependent claims is sufficiently pled is inherently intertwined with the adequacy of the independent claims.  The allegations of the dependent claims themselves must still be sufficient.[90]  That is, Plaintiffs must make a connection between sufficiently pled factual matter of the independent claims, and the simultaneous effect on the dependent claims.  Plaintiffs do so by stating, "Defendants "directly and indirectly infringe at least claims 17-23, 25-28, 30, 32-38, 40, and 41 . . . which depend from independent claims 15 and 29."[91]

As previously found herein, Defendants' motion to dismiss regarding the independent claims is denied.  The acts of infringement of the dependent claims, when read in conjunction with the independent claims and the complaint as a whole, are

---

[86] D.I. 12 at 6.
[87] *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012).
[88] D.I. 12 at 6.
[89] *Id.* at 8.
[90] *See supra* note 79-80.
[91] D.I. 1 at ¶ 30; *see also* D.I. 1 at ¶¶14-30 regarding the bases for infringement of ¶¶15 and 29.

sufficient under Rule 8 and the *Iqbal/Twombly* standard.

In *Windy City Innovations LLC v. Microsoft Corp.*, the United States District Court for the Northern District of California relied on the Federal Circuit decision in *Phonometrics,* noting that "defendant's argument that it should be entitled to notice at the pleading stage of which specific products infringed on which specific claims in the patents is belied by both the local patent rules and Federal Circuit authority."[92]

Defendants maintain Plaintiffs' allegations are conclusory.  Because Plaintiffs sufficiently related their factual assertions of infringement of the dependent claims to the independent claims and the relationship between the independent and dependent claims, they sufficiently pled infringement of the dependent claims.  Defendants' motion to dismiss the claim for infringement of dependent claims should be denied.

### 4.    Deliberate and Willful Infringement

Under *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, there is a two-pronged standard for establishing willful infringement.[93]  First, "a patentee must show by clear and convincing evidence, that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[94]  The infringer's state of mind is not considered in this first inquiry.[95]  Second, the patentee must "establish that 'this objectively defined risk (determined by the record developed in the infringement

---

[92] *Id.* at 7, quoting *Windy City Innovations, LLC v. Microsoft Corp.*, No. 16-01729-YGR, 2016 WL 3361858, at *5 (N.D. Cal. June 17, 2016)) (citing *Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790 794 (Fed. Cir. 2000)).

[93] 29 F. Supp. 3d 455, 458 (D. Del. 2014) (*quoting In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

[94] *Id.*

[95] *Id.*

proceeding) was either known or so obvious that it should have been known to the accused infringer.'"[96]  The second prong is a subjective view, which is based upon the fact finder's assessment of the credibility of the witnesses.[97]  "At the pleadings stage, plaintiffs alleging willful infringement must plead facts giving rise to 'at least a showing of objective recklessness of the infringement risk.'"[98]

Defendants argue that the complaint lacks sufficient facts to plausibly infer willful infringement.  Plaintiffs, however, present evidence of Defendants' Patent No. 7,621,898, which explicitly refers to the '420 Patent.  They urge that reference to their older patent in the '420 patent demonstrates Defendants knew or should have known of the matter in the '920 Reissue Patent, and Defendants maintained their conduct despite the objectively high likelihood that it constituted infringement.  As a result, the first prong of deliberate/willful infringement is sufficiently pled.

Plaintiffs further emphasize that Defendants knew or should have known of the '920 Reissue Patent's matter, and that Defendants were aware of their infringement since the filing of the complaint, and acted in an egregious and wanton manner by continuing to infringe.  These contentions adequately plead the second prong for willful infringement.

Therefore, Defendants' motion to dismiss the claim for willful infringement should be denied.

---

[96] *Id.*
[97] *Id.*
[98] *Id.*

## IV.    RECOMMENDED DISPOSITION

Consistent with the findings herein, it is recommended that pursuant to FED. R. CIV. P. 12(b)(6) and the *Iqbal/Twombly* standard, Defendants' motion to dismiss (D.I. 8) be granted in part and denied in part as follows:

1.    Defendants' motion to dismiss the claim for direct infringement should be denied.

2.    Defendants' motion to dismiss the claim for indirect infringement in the inducement, should be granted as it relates their conduct prior to filing of the complaint.  It should be denied as to their post-filing conduct.

3.    Defendants' motion to dismiss the claim for contributory infringement should be granted for their conduct prior to filing of the complaint, and denied regarding their post-filing conduct.

4.    Defendants' motion to dismiss infringement of the dependent claims should be denied.

5.    Defendants' motion to dismiss willful infringement should be denied.

Pursuant to 28 U.S.C. §636(b)(1)(A) and (B), Fed. R. Civ. P. 72(b) and D. Del. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days and is limited to ten (10) pages after being served with the same. Any response shall be due within fourteen (14) days thereafter and is limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72 dated October 9, 2013, a copy of which is

available on the court's website, www.ded.uscourts.gov.


Dated: April 6, 2017                                    /s/ Mary Pat Thynge
                                                        Chief U.S. Magistrate Judge