## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZIMMER SURGICAL, INC. and
DORNOCH MEDICAL SYSTEMS, INC.,

Plaintiffs,

v.

Civil Action No. 16-679-RGA

STRYKER CORPORATION and
STRYKER SALES CORPORATION,

Defendants.

---

STRYKER CORPORATION and
STRYKER SALES CORPORATION,

Counterclaim Plaintiffs,

v.

ZIMMER SURGICAL, INC., ZIMMER,
INC., and DORNOCH MEDICAL SYSTEMS,
INC.

Counterclaim Defendants.

## MEMORANDUM OPINION

Frederick L. Cottrell, III, Christine D. Haynes, RICHARDS, LAYTON & FINGER LLP,
Wilmington, DE; J. Michael Jakes (argued), Kathleen Daley (argued), Susan Y. Tull (argued),
Benjamin A. Saidman, Scott A. Allen, FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER LLP, Washington, DC.

Attorneys for Plaintiffs and Counterclaim Defendants.

Anne Shea Gaza, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, DE; Robert A. Surrette, Sandra A. Frantzen (argued), Katherine Ramlose (argued),
MCANDREWS, HELD & MALLOY, LTD., Chicago, IL.

Attorneys for Defendants and Counterclaim Plaintiff.

June **|9**, 2018

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before me is the issue of claim construction of multiple terms in U.S. Patent

Nos. RE44,920 ("the '920 patent") and 9,579,428 ("the '428 patent"). I have considered the

parties' Joint Claim Construction Brief. (D.I. 217). I held oral argument on May 15, 2018. (D.I.

269 ("Tr.")).

## I.    LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to

which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or

catechism for conducting claim construction.' Instead, the court is free to attach the appropriate

weight to appropriate sources 'in light of the statutes and policies that inform patent law.'"

*SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at \*1 (D. Del. Sept. 4, 2013) (quoting *Phillips*,

415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the

literal language of the claim, the patent specification, and the prosecution history. *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

(1996). Of these sources, "the specification is always highly relevant to the claim construction

analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."

*Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . .

[Which is] the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention, i.e., as of the effective filing date of the patent application."

*Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a

claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321

2

(internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19. Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation omitted).

## II. BACKGROUND

Zimmer Surgical, Inc. and Dornoch Medical Systems, Inc. assert the '920 patent against Stryker Corporation and Stryker Sales Corporation. (D.I. 1). The '920 patent relates to a "system for collecting, treating, and disposing of waste fluid using a mobile waste fluid

3

collection cart with an associated waste fluid disposal unit." (D.I. 217 at 1 (citing '920 patent, 4:4-6)).

Stryker asserts the '428 patent against Zimmer Surgical, Inc., Zimmer, Inc., and Dornoch Medical Systems, Inc. (collectively, "Zimmer"). (D.I. 48). The '428 patent relates to a "surgical waste collection system with an intake manifold that has an off-center outlet opening and that interfaces with a waste collection unit that has a receptacle that allows the manifold to be seated in a particular angled orientation, allowing medical waste to flow into a canister using an onboard vacuum source." (D.I. 217 at 10).

The following claims in the '920 patent are representative for purposes of this Markman:

15. *A system for handling waste fluid from a patient*, comprising:

    a) a movable waste fluid collection cart including:

        i) a body supported by a plurality of wheels;

        ii) a flushing portion and a drain portion; and

        iii) at least two containers supported by the body, each container including a suction port, each container being configured to collect liquid waste from the patient via its respective suction port when a vacuum is applied to the container, *at least one of the suction ports being configured to provide at least two different levels of suction*, an outlet from each container being operatively connectable to the drain portion and an inlet to each container being operatively connectable to the flushing portion; and

    b) a waste fluid disposal unit including:

        i) a *first portion coupleable to the flushing portion of the waste fluid collection cart*, the first portion being connectable to a water source via a water line to provide water to the waste fluid collection cart when the first portion is coupled to the flushing portion; and

        ii) a *second portion coupleable to the drain portion of the waste fluid collection cart*, the second portion being connectable to a drain via a drain pump, wherein patient's waste fluid in the waste

4

fluid collection cart is pumpable to the drain by the drain pump when the second portion is coupled to the drain portion and to the drain.

17. The system of claim 15, wherein *a level of vacuum in one of the at least two containers is controllable independently from a level of vacuum in another of the at least two containers.*

29. *A system for handling waste fluid from a patient,* comprising:

    a) a movable waste fluid collection cart including:

        i) a body supported by a plurality of wheels;

        ii) a flushing portion and a drain portion; and

        iii) at least two containers supported by the body, each container including a suction port, each container being configured to collect liquid waste from the patient via its respective suction port when a vacuum is applied to the container, *a level of suction at one of the suction ports being independently adjustable of a level of suction at another of the suction ports*, outlets from the at least two containers being operatively connectable to the drain portion and an inlet to each container being operatively connectable to the flushing portion; and

    b) a waste fluid disposal unit including:

        i) a *first portion coupleable to the flushing portion of the waste fluid collection cart*, the first portion being connectable to a water source via a water line to provide water to the waste fluid collection cart when the first portion is coupled to the flushing portion;

        ii) a *second portion coupleable to the drain portion of the waste fluid collection cart*, the second portion being connectable to a drain via a drain pump, wherein patient's waste fluid in the container is pumpable to the drain by the drain pump when the second portion is coupled to the drain portion and to the drain.

32. The system of claim 29, wherein *at least one of the suction ports is configured to provide at least two different levels of suction.*

(D.I. 1-1, Exh. A) (disputed terms italicized).

The following claims in the '428 patent are representative for purposes of this Markman:

1.  A medical/surgical waste collection assembly, said assembly including:

    *a manifold, said manifold including:*

      *a housing with proximal and distal ends, a longitudinal axis that extends
      between the proximal and distal ends and an outlet opening at the
      proximal end,* the outlet opening being off center from the longitudinal
      axis of the manifold housing; and

      a fitting that extends from the *distal end* of said manifold housing, said
      fitting shaped to receive a suction line and being in fluid communication
      with the outlet opening of said manifold housing; and

    a waste collection unit including:

              a first canister for holding medical/surgical waste;

              a suction pump in fluid communication with said first canister, said
              suction pump configured to draw a suction on said first canister;
              and

              a first receiver adjacent said first canister, said first receiver shaped
              to have: a bore dimensioned to receive said manifold housing, the
              bore having an open *distal end* into which said manifold housing is
              inserted and having a *proximal end* in fluid communication with
              said first canister; and an axis that extends through the bore,

    wherein:

    said manifold housing and said first receiver are collectively configured so
    that said manifold housing is able to rotate in the bore of said first receiver;

    said manifold and said first receiver are formed with complementary
    alignment features that engage when the manifold is inserted into the bore of
    said first receiver so as to cause the outlet opening of said manifold housing to
    be, upon insertion into the bore, in a specific rotational alignment in the bore;
    and

    said first receiver is attached to said first canister so that the axis through the
    receiver bore is angled from the horizontal and said alignment features of said
    manifold and said first receiver are arranged so that, when said manifold is
    initially inserted into the bore of said first receiver, *the outlet opening of said
    manifold housing is in a first rotational position about the axis through the
    receiver bore and, when said manifold housing is rotated in the bore, the
    outlet opening is in a second rotational position about the axis through the*

*receiver bore so that the outlet opening is located below the position of the outlet opening when the outlet opening is in the first rotational position.*

8. The medical/surgical waste collection assembly of claim 1, further including a valve disposed in said first receiver that opens and closes *a fluid communications path from the bore of said first receiver into said first canister.*

23. A medical waste collection mobile unit for use with *a manifold having* an inlet fitting, *an outlet opening* that is off center relative to a longitudinal axis through the manifold and at least one outwardly extending tab, said system including:

a mobile cart;

a first canister mounted to said cart;

a suction pump mounted to said cart in fluid communication with the first canister for drawing a suction on the first canister;

a first receiver mounted to said cart adjacent said first canister, said first receiver having: a bore, the bore having an open *distal end*, a *proximal end* in fluid communication with said first canister, an axis between the ends and the bore being dimensioned to receive the manifold and allow the manifold to rotate in the bore; *a fluid communications path from the receiver bore into said first canister*; and at least one slot that extends outwardly from the bore, the slot dimensioned to receive the manifold tab; a groove that extends from a *proximal end* of the at least one slot, the groove dimensioned to receive the manifold tab and so that the tab can rotate in the groove wherein, said first receiver is attached to said first canister so that the axis through the receiver bore is angled from the horizontal so that, when the tab of the manifold is initially inserted into the slot of said first receiver, *the outlet opening of the manifold is in a first rotational position about the axis through the receiver bore and, when the manifold is rotated in the bore, the outlet opening is in a second rotational position about the axis through the receiver bore so that the outlet opening is located below the position of the outlet opening when the outlet opening is in the first rotational position.*

(D.I. 48-1, Exh. 1) (disputed terms italicized). Disputed terms also appear in claims 14, 18, 24,

and 25 of the '428 patent. (D.I. 217 at xi-xiii).

The parties agree to constructions for several additional terms in both the '920 patent and

'428 patent. (*Id.* at xiv).

## III. TERMS FOR CONSTRUCTION

## A. "A system for handling waste fluid from a patient" ('920 patent, claims 15 and 29)

7

1. *Zimmer's proposed construction*: Plain and ordinary meaning

2. *Stryker's proposed construction*: The claim preamble does not serve as a limitation on the claim

3. *Court's construction*: The claim preamble does not serve as a limitation on the claim

Claims 15 and 29 of the '920 patent contain an identical preamble. The parties dispute whether that preamble serves as a claim limitation.[1] (D.I. 217 at 17-19).

"[A]s a general rule preamble language is not treated as limiting." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012). A claim preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Zimmer argues that the preamble is limiting. It argues that "the patient" appears in the claim body, and has an antecedent basis in the preamble's reference to "a patient." (D.I. 217 at 21). Zimmer analogizes this preamble's use of "a patient" to the preamble's use of "a user" in *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015). There, "[t]he term 'user' in the preamble of claim 25 provide[d] antecedent basis for the term 'user' in the body of that claim." *Id.* The Federal Circuit found the preamble limiting. *Id.*

But "the mere fact that a . . . term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim." *Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010). Here, the preamble is not limiting. Unlike the "user" recited in the *Pacing* preamble, the "patient" recited in this preamble is not "necessary to

---

[1] Stryker says that whether the preamble is limiting is relevant to whether the priority date of the patent is 2002 or 2006. (Tr. at 34-37).

8

understand" the later reference to "the patient" in the claim body. 778 F.3d at 1024. The "patient" limitation in the claim body is understandable on its own. ('920 patent, claim 15).

Thus, "a system for handling waste fluid from a patient" is simply a part of a "descriptive name for the invention that is fully set forth in the bodies of the claims." *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358-59 (Fed. Cir. 2010). Zimmer argues that *American Medical* is distinguishable because the preamble there ("of tissue") did not provide an antecedent basis for the later claim term ("a tissue"). (D.I. 217 at 21). However, there, just as here, the preamble term "did not provide context essential to understanding the meaning of" the later claim term, and did not embody "an essential component of the invention." *Am. Med.*, 618 F.3d at 1359.[2]

The claim defines a structurally complete invention in the claim body and uses the preamble to state the intended use for the claimed system. The preamble does not serve as a limitation.

## B. "at least one of the suction ports being [is] configured to provide at least two different levels of suction" ('920 patent, claims 15 and 32)

1. *Zimmer's proposed construction*: Plain and ordinary meaning; "at least one of the suction ports can provide at least two levels of suction"

2. *Stryker's proposed construction*:

   This claim element is indefinite under § 112.

   To the extent it can be understood: Plain and ordinary meaning; "at least one of the suction ports is designed in a way to provide two or more different levels of suction"

3. *Court's construction*: Plain and ordinary meaning; "at least one of the suction ports is arranged within the system to provide at least two levels of suction"

---

[2] Stryker also argues that the claims are not limited to handling medical waste from "patients," because Zimmer argued during prosecution that claims 15-41 are not limited to handling waste from patients. (D.I. 217 at 22). During prosecution, Zimmer cited paragraphs and embodiments relating to non-patient uses, like "cell culture waste fluid." (D.I. 218-1 at JA90). However, in light of my conclusion, I need not evaluate Stryker's argument.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

Stryker argues that this claim term is indefinite. (D.I. 217 at 25). The claim term describes a "suction port" that is "configured to provide at least two different levels of suction." ('920 patent, claim 15). The parties agree that the suction ports do not themselves generate suction. (D.I. 217 at 25, 28-29). Nothing in the patent's specification describes the suction ports as being anything more than ports for connecting the claimed container to a tube which leads to the region of a patient from which fluid wastes are collected. ('920 patent, 5:26-33). Thus, as Stryker notes, it is the unclaimed "valve control system [that] provide[s] two different levels of suction for the system." (*Id.* at 26 (citing '920 patent, 5:60-6:40)). The parties agree that these two different levels of suction are provided at one suction port. (D.I. 217 at 28, 29).

Stryker effectively argues that because the claimed "suction port" cannot itself generate suction, the "suction port" cannot be "configured to provide" suction. (*Id.* at 25, 27-28). As a result, argues Stryker, the claim limitation is "nonsensical."[3] (*Id.*). I disagree. I think the claim limitation has to be read in the context of the entire intrinsic record.

The parties agree that "configured to" can mean "made to," "designed to," "adapted to," or "arranged to." (D.I. 217 at 26, 29 (citing *In re Man Mach. Interface Techs., LLC*, 822 F.3d 1282, 1286 (Fed. Cir. 2016)). In other words, "configured to" may have shades of meaning. The patentee's choice to describe the suction ports as being "configured to" provide suction is odd,

---

[3] Stryker also argues that Zimmer's plain meaning construction wrongfully rewrites the claims, substituting "can" for "is configured to." (*Id.* (citing *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) ("a nonsensical result does not require the court to redraft the claims"))).

because the suction ports are passive. However, the specification informs a skilled artisan that an unclaimed valve control system generates at least two levels of suction, and the suction ports must be arranged within the claimed system to provide those two or more levels of suction.[4] ('920 patent, 5:26-6:40). Put differently, the suction ports must somehow connect to the vacuum source, such that they provide at least two levels of suction. Were that connection to break, the suction ports would no longer be arranged within the system to provide at least two levels of suction. Therefore, in the context of the entire intrinsic record, "configured to" means "arranged within the system to."[5]

The system can be likened to a traditional home vacuum cleaner with three suction settings—high, low, and off. That vacuum cleaner might have an attachment that allows the user to reach into hard-to-reach spaces. The end of the attachment is passive, as the vacuum cleaner itself generates the various levels of suction. Nonetheless, one could reasonably say that the end of the attachment "is arranged within the system to provide at least two levels of suction," high and low, to hard-to-reach spaces. Similarly, one could say that the claimed "suction ports are arranged" within the claimed system as a whole, through at least one connection, "to provide at least two levels of suction." Accordingly, I do not find this term "nonsensical" or indefinite.

I do not read Stryker's proposed "designed to" construction into the claim. The plain and the ordinary meaning of the limitation in the context of the claim does not require that the suction ports themselves actually be designed to generate, or "provide," suction, as explained above. Accordingly, I adopt "at least one of the suction ports is arranged within the system to provide at least two levels of suction" as my construction.

---

[4] Because the valve control system is unclaimed, this limitation is not redundant.

[5] Because "configured to" can mean "arranged to," I am not rewriting the claim. Rather, I am interpreting the claim in the context of the intrinsic record.

## C. Waste fluid disposal unit including: "first portion coupleable to the flushing portion of the waste fluid collection cart" and "second portion coupleable to the drain portion of the waste fluid collection cart" ('920 patent, claims 15 and 29)

1. *Zimmer's proposed construction*: Plain and ordinary meaning

2. *Stryker's proposed construction*:

Claim elements are indefinite. To the extent that it can be understood, the claim element should be interpreted to invoke Section 112 ¶ 6:

"a first portion coupleable to the flushing portion . . ." is "a flushing connector (176 or 276) on the disposal unit that can be coupled and uncoupled to one of two flushing connectors mounted on the waste fluid collection cart (168a and 168b) via a tube (184). Each of the flushing connectors on the cart in turn connects with each container via a tube (172) to perform a flushing operation within each container when coupled and a flushing cycle is initiated."

The "first portion" and "flushing portion" perform the functions of "flushing" and "connecting or coupling to each other or parts of the system." (D.I. 217 at 35-36, 42).[6]

"a second portion coupleable to the drain portion . . ." is "a drain or transfer connector (178 or 278) on the disposal unit that can be coupled and uncoupled to one of two drain connectors mounted on the waste fluid collection cart (46a and 46b) via a tube (186). Each of the drain connectors on the cart communicate with a drain valve (36) controlled by a drain handle. Each drain valve connects with each container via a tube to perform a draining operation in each container when coupled and the drain valve is opened and a draining cycle is initiated."

The "second portion" and "drain portion" perform the functions of "draining" and "connecting or coupling to each other or parts of the system." (D.I. 217 at 35-36, 42).

Equivalents of the above.

3. *Court's construction*: Plain and ordinary meaning

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124.

---

[6] Stryker did not provide functions until it submitted its first brief.

Stryker argues that these claims terms are indefinite, because a skilled artisan would be unable to identify what the first and second portions of a waste disposal unit, and the flushing and drain portions of a waste fluid collection cart, actually are. (D.I. 217 at 32). Stryker asserts that "the specification does not provide enough guidance to inform a skilled artisan, with reasonable certainty, as to what structure(s) constitute" each "portion." (*Id.* at 33).

Zimmer responds that the limitations are clear. (*Id.* at 36-40). Zimmer says the "first portion" is a "discrete part of the 'waste fluid disposal unit' and 'is connectable to a water source via a water line,'" and the "second portion" is "another discrete part of the 'waste fluid disposal unit' and is 'connectable to a drain via a drain pump.'" (*Id.* at 38 (citing '920 patent, 15:3, 19, 24)). Zimmer further says "the 'flushing portion' is a discrete part of the cart for flushing the containers and the 'draining portion' is a discrete part of the cart for draining the same." (*Id.* at 39 (citing '920 patent, 9:9-21)). Zimmer avers that any more specificity in defining these "portions" is "not necessary," because the term "portion" is known and provides sufficient structure in the context of the remainder of the claims. (D.I. 217 at 9; Tr. at 21:17-20).

I agree with Zimmer. The "portion" terms are understandable to a skilled artisan in the context of the claims. The claims do not contain a precise requirement for which "portions" of the disposal unit and cart connect to one another. However, the breadth of these particular requirements does not render the entirety of the claims indefinite. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017) ("[B]readth is not indefiniteness."). These particular limitations "inform, with reasonable certainty, those skilled in the art about the scope of the invention," and make sense in the context of the claims for the reasons articulated by Zimmer. I therefore find the claims not indefinite.

13

To the extent to the claim terms are not indefinite, Stryker argues that all four "portion"

terms must be construed as a means-plus-function terms under § 112, ¶ 6. (D.I. 217 at 34, 35-

36). There is a presumption that a claim element without the word "means" is not means-plus-

function. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). Here, the

claims do not contain the word "means." ('920 patent, claim 15). But "nonce words" can rebut

this presumption. "The standard is whether the words of the claim are understood by persons of

ordinary skill in the art to have a sufficiently definite meaning as the name for structure. . . .

Generic terms . . . and other nonce words that reflect nothing more than verbal constructs may be

used in a claim in a manner that is tantamount to using the word 'means' because they 'typically

do not connote sufficiently definite structure.'" (D.I. 217 at 35; *Williamson*, 792 F.3d at 1349-

50).

Stryker's argument falls short. "Portion" is not a nonce word. Stryker cites a District

Court case in which a "portion" term was found to be a means-plus-function limitation. (D.I.

217 at 35 (citing *Johnson Safety, Inc. v. Voxx Int'l Corp.*, 2016 WL 6781115, at \*6-7 (C.D. Cal.

Nov. 16, 2016))). In *Johnson Safety*, the court could not determine "what structure comprises

the 'pivot-limiting portion,'" and concluded that "the claim recites a function without a

corresponding structure." 2016 WL 6781115, at \*7. However, unlike that term, the "portion"

terms here do not recite function and may be "understood by persons of ordinary skill in the art

to have a sufficiently definite meaning as the name for structure." In other words, the "portion"

terms are broad, but identifiable. They are more than "verbal constructs." The claims cover and

provide details about a "system for handling waste fluid," which comprises "a movable waste

fluid collection cart" with several structural limitations, and "a waste fluid disposal unit." ('920

14

patent, claim 15). The "portion" terms describe how the claimed "cart" is connected to the claimed "unit."

Accordingly, Stryker has not overcome the presumption that the disputed limitations are not means-plus-function terms. I will give the terms their plain and ordinary meaning.

**D. "a level of suction at one of the suction ports being independently adjustable of a level of suction at another of the suction ports" ('920 patent, claim 29); "a level of vacuum in one of the at least two containers is controllable independently from a level of vacuum in another of the at least two containers" ('920 patent, claim 17)**

1. *Zimmer's proposed construction*:

   "a level of suction . . .": Plain and ordinary meaning; "the level of suction at one suction port may be adjusted independent of the level of suction at another suction port"

   "a level of vacuum . . .": Plain and ordinary meaning; "the level of vacuum in one container may be controlled independent of the level of vacuum in the other container"

2. *Stryker's proposed construction*:

   This claim element is indefinite under § 112. To the extent that it can be understood:

   "The level of suction at one suction port may be adjusted by using a valve control system and a regulator while an unregulated, full vacuum may be pulled at a second suction port. The level of suction at one port is independent from the level of suction at the other port."

   "The level of vacuum in one container may be controlled by using a valve control system and regulator while an unregulated, full vacuum may be pulled on the other container. The level of vacuum in one container is independent from the level of vacuum in the other container."

3. *Court's construction*: Plain and ordinary meaning

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124.

Stryker argues that these limitations use functional claiming. (D.I. 217 at 45). Zimmer does not directly argue otherwise. (*Id.* at 48-50). The system claims do not provide any

structure that fulfills the function recited in the disputed limitations. ('920 patent, claims 17, 19). Therefore, I agree with Stryker.

There is no *per se* bar on functional claiming. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255-56 (Fed. Cir. 2008). However, "a vice of functional claiming occurs 'when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty.'" *Halliburton Energy Servs.*, 514 F.3d at 1255 (quoting *General Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371 (1938)).

Stryker argues that the patentee succumbed to this vice of functional claiming, making the claims indefinite. The parties seem to agree that the claims' point of novelty is "having two different containers and then having [an] independently adjustable and controllable level of vacuum or level of suction, depending on which claim it is." (Tr. at 24:8-14, 40:8-41:5; D.I. 218-1 at JA92). Stryker argues that Zimmer uses functional language at this point of novelty, making the claims indefinite. (D.I. 217 at 46).

However, this indefiniteness issue is better raised at summary judgment. Accordingly, I will give these limitations their plain and ordinary meaning.[7]

## E. "distal end" / proximal end" ('428 patent, claims 1, 14, 23, 24, 25)

1. *Stryker's proposed construction*: Plain and ordinary meaning; "The distal end is the portion or area that is closest towards the surgical site. The proximal end is the portion or area that is furthest away from the surgical site."

2. *Zimmer's proposed construction*: "The distal end is the closest point towards the surgical site. The proximal end is the furthest point away from the surgical site."

---

[7] Stryker proposes constructions to the extent the limitations are determined not to be indefinite. (D.I. 217 at 46). Stryker specifically argues that I should read "a valve control system and regulator" into the claims from the specification. (*Id.*). However, I cannot limit the claims to a single preferred embodiment absent lexicography or disclaimer. *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."). Stryker does not argue that there is lexicography or disclaimer here. Given the absence of lexicography or disclaimer, Stryker's proposal essentially amounts to a means-plus-function construction. However, neither party has argued that these are means-plus-function terms, and neither party has identified functions that correspond to any purported means. Therefore, I will not adopt Stryker's proposed construction.

3. *Court's construction*: Plain and ordinary meaning. Distal refers to what is closest to the surgical site. Proximal refers to what is furthest away from the surgical site.

The "proximal" and "distal" ends of various components of the claimed assembly are mentioned throughout the claims. The parties agree that "proximal" refers to the end furthest away from the surgical site, and "distal" refers to the end closest toward the surgical site. (D.I. 217 at 52). However, they disagree as to the meaning of "end." (*Id.*).

Stryker proposes that each "end" must be a "portion or area" on the half of the component closest to or furthest from the surgical site. Zimmer, on the other hand, proposes that each "end" must be a "point." I find Stryker's proposed construction too broad, and Zimmer's too narrow.

As to Stryker's proposed construction, no teaching in the patent specifies that "end" refers to an entire half of a given structure. A skilled artisan would understand "end" to be substantially less than the entire half of a structure. For example, the parties cite a dictionary definition of "end," in which the term is defined as "part of an area that lies at the boundary." (D.I. 217 at 54, 56; D.I. 220-1 at A854). "[A]t the boundary" does not equate to half of a structure. Additionally, claims in related patents refer to a "proximal section," which is distinct from and presumably broader than a "proximal end." (D.I. 217 at 60; U.S. Patent No. 7,615,037, claim 1). Accordingly, I do not adopt Stryker's construction.

As to Zimmer's proposed construction, no teaching in the patent specifies that "end" refers to a single point. Zimmer does not identify any instances where the specification refers to the "distal end" or "proximal end" as a "point." "Absent disclaimer or lexicography, the plain meaning of the claim controls." *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed.

17

Cir. 2012). Zimmer does identify any lexicography or disclaimer which requires me to read "point" into "end."

Furthermore, Zimmer's construction distorts the meaning of "end" in the context of embodiments in the specification. For example, Figure 5 of the patent describes surface 63 as being at the "proximal end of the manifold receiver." ('428 patent, 5:27-30). Surface 63 is contiguous with the end point of the manifold receiver, but it extends beyond the end point, towards the center of the receiver.



FIG. 5

Zimmer argues that surface 63 is *at* the end "point" of the receiver, even though it merely touches the end "point." (D.I. 217 at 58-59). Furthermore, claims in related patents refer to the "proximal end base," which is distinct from and presumably narrower than a "proximal end." (*Id.* at 65). Given the lack of lexicography or disclaimer, Zimmer's proposed construction is at best confusing and unnecessary, and at worst, unduly narrow. Accordingly, I do not adopt Zimmer's construction.

18

A skilled artisan would understand what the "distal end" or "proximal end" of a device

refers to. Thus, I adopt a plain and ordinary meaning construction, explaining "distal" and

"proximal." Neither side can argue its claim construction to the jury.

## F. "a manifold having . . . an outlet opening" ('428 patent, claim 23); "a manifold, said manifold including: a housing with proximal and distal ends, a longitudinal axis that extends between the proximal and distal ends and an outlet opening at the proximal end . . ." ('428 patent, claims 1, 14)

1. *Stryker's proposed construction*:

   Claim 23: Plain and ordinary meaning; "a manifold having an opening where material can exit"

   Claims 1 and 14: "manifold including: . . . an outlet opening at the proximal end [of the housing]" means "the manifold includes an opening at the proximal end (of the housing) [defined in Term 5] where material can exit"

2. *Zimmer's proposed construction*:

   Claim 23: An opening in the closed end of the manifold.

   Claims 1 and 14: "a housing with . . . an outlet opening at the proximal end" means "an opening in the outer enclosure of the manifold at the point of the manifold further away from the surgical field"

3. *Court's construction*:

   Claim 23: Plain and ordinary meaning: "a manifold having . . . an opening where material can exit"

   Claims 1 and 14: "manifold including: . . . an outlet opening at the proximal end [of the housing]" means "manifold including . . . an opening at the proximal end where material can exit"

   Zimmer argues that I must read "closed end" into the first limitation and "outer

enclosure" into the second limitation. (D.I. 217 at xii).

   As to Zimmer's "closed end" proposal for claim 23, Zimmer asserts that these limitations

are necessary to achieve what the '428 patent characterizes as "the invention." (D.I. 217 at 70-

71 (citing *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)

19

("When a patent thus describes features of the 'present invention' as a whole, this description limits the scope of the invention"))). In essence, Zimmer asserts that the manifold "can't be open-ended for the claims to work." (Tr. at 89:17-23). However, the specification never teaches that the claimed manifold must include a "closed end." Rather, it teaches that the invention must "prevent the release of uncollected waste still in the manifold." ('428 patent, 1:32-37). The specification includes an embodiment with a "shell opening," which Zimmer says includes a closed end that can "prevent the release of uncollected waste still in the manifold."[8] (D.I. 217 at 70-72). However, as an embodiment, this "closed end" represents just one way to "prevent the release of uncollected waste still in the manifold." I cannot read embodiments into the claims from the specification. *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").

As to Zimmer's "outer enclosure" proposal for claims 1 and 14, Zimmer asserts that the relevant claims already capture this requirement. (D.I. 217 at 71-72). Zimmer says claims 1 and 14 "make clear that the outlet opening must be in the manifold housing or shell itself." (*Id.*). Zimmer assumes that the "manifold housing" is equivalent to the "outer enclosure of the manifold." (*Id.* at 71). Stryker does not contest these assertions. (*Id.* at 72-74). Because the disputed claims already capture this requirement, I need not read Zimmer's proposal into the disputed limitation.

---

[8] The specification states that this embodiment is "one specific version of the waste collection system," and "there is no requirement that each of the above described features be incorporated into all versions of the invention." ('428 patent, 18:26-31).

I find that Stryker's proposed construction captures the plain and ordinary meaning of the

disputed limitations.[9]  I essentially adopt Stryker's construction.

**G.  ". . . the outlet opening of [said manifold housing / the manifold] is in a first rotational position about the axis through the receiver bore and, when [said manifold housing / the manifold] is rotated in the bore, the outlet opening is in a second rotational position about the axis through the receiver bore so that the outlet opening is located below the position of the outlet opening when the outlet opening is in the first rotational position" ('428 patent, claims 1, 14, and 23)**

1. *Stryker's proposed construction*: Plain and ordinary meaning; ". . . the outlet opening is initially in a first position about the axis through the bore.  When the [manifold housing / manifold] is rotated in the bore, the outlet opening is in a second position about the axis so that it is located beneath (lower than) the position of the opening when it was in the first position."

2. *Zimmer's proposed construction*: ". . . the outlet opening is in a first position and then the manifold is rotated to a second position where the outlet opening is directly beneath where the outlet opening was when it was in the first position."

3. *Court's construction*: ". . . the outlet opening is initially in a first position about the axis through the bore.  When the [manifold housing / manifold] is rotated in the bore, the outlet opening is in a second position about the axis so that it is located beneath the position of the opening when it was in the first position."

"Each of the three [disputed] claims ends with a recitation of how the manifold is inserted

into and rotated within the receiver and how the alignment features of the manifold and receiver

engage to allow for a precise and particular rotational alignment of the outlet opening to achieve

the desired benefits of the claimed invention."  (D.I. 217 at 76).  The parties' dispute centers on

the meaning of "below."  Zimmer contends that "below" means "directly beneath."  (*Id.* at 78).

Stryker contends that "below" has its plain and ordinary meaning of "beneath (lower than)".  (*Id.*

at 76).

The parties agree that the second rotational position must be "beneath" the first rotational

position.  (*Id.* at viii).  Zimmer further argues that the second rotational position must be

---

[9] Zimmer does not dispute the substance of Stryker's plain and ordinary meaning construction.  Rather, it argues that additional limitations are required.  (D.I. 217 at 69-72, 74-75).

"directly" beneath the first rotational position. (*Id.* at 77). In an embodiment in the specification, the outlet opening is at a 12 o'clock position in its first rotational position. (*Id.* at 78 (citing '428 patent, 16:38-43)). In its second rotational position, the outlet opening is at 6 o'clock, or "directly" below the first rotational position. (*Id.*). Zimmer explains that this is "the only embodiment which would enable the purpose or allow for the purpose of the claimed invention." (Tr. 97:23-25). However, I cannot limit the claims to a single preferred embodiment absent lexicography or disclaimer. *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."). Zimmer does not argue that there is lexicography or disclaimer. Accordingly, I will not adopt Zimmer's construction.[10,11]

Zimmer argues that Stryker's construction would "render this limitation meaningless in certain situations." (D.I. 217 at 78). Zimmer argues that Stryker's construction "would cover rotations from 12 o'clock to a minute after 12 o'clock." (*Id.* at 78-79). I disagree. I do not believe a skilled artisan would find that a rotational position at 12:01 is "beneath" a rotational position at 12 o'clock, given the description in the claims. For that reason, I do not adopt the "lower than" portion of Stryker's construction.[12] Instead, I use the agreed-upon "beneath" in my construction.

---

[10] Zimmer also argues that the claimed invention will only work if the outlet opening's second rotational position is directly below the first rotational position. (Tr. 97:23-98:19). Zimmer points to no direct teaching or disclaimer to this effect. Zimmer can raise this argument later, in the appropriate invalidity context.

Even if a rotation of a certain number of degrees is necessary for the invention to work, Zimmer points to no information indicating that this rotation must be so exact that only a second rotational position "directly below" the first will allow the invention to work. Zimmer's failure to do so provides further grounds for me to reject its "directly beneath" construction.

[11] Stryker argues that Zimmer's construction reads out a preferred embodiment. (D.I. 217 at 79-80). In light of my construction, I need not assess this argument.

[12] Zimmer retrieved the "lower than" portion of its construction from a dictionary. (D.I. 220-1 at A853). However, I do not believe this definition applies in the context of the claims. The claims require the rotation to achieve something, whereas the dictionary definition provides that any point located infinitesimally below a first point is "lower than" that first point.

**H. "a fluid communications path from the bore of said first receiver into said first canister"; "a fluid communications path from the bore of said first receiver into said first canister" ('428 patent, claims 8, 18, 23)**

1. *Stryker's proposed construction*: Plain and ordinary meaning; "a path for conveying fluid from the receiver bore into the first canister"

2. *Zimmer's proposed construction*: "a conduit and fluid flow between the receiver and the first canister"

3. *Court's construction*: Plain and ordinary meaning; "a path for conveying fluid from the receiver bore into the first canister"

The parties agree that a "fluid communications path" from the receiver bore to the canister is a pathway that allows for waste fluid to flow from the bore of the receiver into the canister. They dispute whether that pathway should be a "conduit," as Zimmer contends, or any path, as Stryker contends. (D.I. 217 at 83).

Zimmer characterizes the dispute as "whether a fluid communications path requires that fluid flow be directed, such as by a conduit or other structure, or be unconstrained, such as by opening directly into the container." (*Id.* at 91-92). Zimmer avers that the specification discloses two embodiments, and that these claims are drawn only to one of those embodiments. (*Id.* at 85-86). Zimmer explains that the "fluid communications path" is expressly and only used to describe the first embodiment, where fluid flow is directed by a structure. (*Id.* at 85-86 (citing '428 patent at 4:55-58)). On the other hand, says Zimmer, the second embodiment has no fluid communications path but instead "may open directly into the storage space." (D.I. 217 at 86 (citing '428 patent at 18:44-48)). Zimmer separately argues that "fluid communications path" must be construed as a "conduit," so as to distinguish it from "fluid communication openings," and "in fluid communication," which appear in the specification and claims, respectively. (*Id.* at 87-88, 93).

Stryker, on the other hand, notes, "The specification repeatedly references a 'path' as any pathway in which fluid or material is conveyed." (D.I. 217 at 84). For example, the specification explains that a gap or a void can define a path. ('428 patent, 5:34-35, 17:65-18:1).

I agree with Stryker. "Absent disclaimer or lexicography, the plain meaning of the claim controls." *See Toshiba Corp.*, 681 F.3d at 1369. Zimmer does not identify lexicography or disclaimer requiring its construction. The specification's preferred embodiment includes "conduit 56" as a preferred pathway.[13] ('428 patent, 6:36-38). However, it is improper to limit the claims to a preferred embodiment. *Phillips*, 415 F.3d at 1323. Furthermore, other claims in the patent refer to a "conduit." (*See, e.g.,* '428 patent, claim 5). The doctrine of claim differentiation provides that "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scopes." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007). Accordingly, "path" should be given a broader scope than "conduit." I will construe the claimed "path" to be a "path," rather than a "conduit," as per the patentee's word choice.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.

---

[13] The specification states that the main embodiment is "one specific version of the waste collection system," and "there is no requirement that each of the above described features be incorporated into all versions of the invention." ('428 patent, 18:26-31).