IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ZIMMER SURGICAL, INC. and DORNOCH
MEDICAL SYSTEMS, INC.,

        Plaintiffs;

        v.

STRYKER CORPORATION and STRYKER
SALES CORPORATION,

        Defendants and
        Counterclaim Plaintiffs;

        v.

ZIMMER, INC., ZIMMER SURGICAL, INC.,
DORNOCH MEDICAL SYSTEMS, INC., and
ZIMMER U.S., INC.,

        Counterclaim Defendants.

Civil Action No. 16-679-RGA

## MEMORANDUM OPINION

Frederick L. Cottrell, III and Christine D. Haynes, RICHARDS, LAYTON & FINGER LLP,
Wilmington, DE; J. Michael Jakes (argued), Kathleen A. Daley (argued), Susan Y. Tull,
Benjamin A. Saidman, and Scott A. Allen (argued), FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP, Washington, DC, attorneys for Plaintiffs and Counterclaim
Defendants.

Anne Shea Gaza and Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, DE; Robert A. Surrette (argued), Sandra A. Frantzen (argued), Deborah A.
Laughton, Ryan Pianetto, and Bryce Persichetti, MCANDREWS, HELD & MALLOY, LTD,
Chicago, IL, attorneys for Defendants and Counterclaim Plaintiffs.

March ___, 2019

**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court are the parties' motions for summary judgment (D.I. 309, 310, 311, 312, 313, 316, 356, 411) and *Daubert* motions to exclude expert testimony and opinions. (D.I. 317, 321, 322, 327). The parties have fully briefed the issues (D.I. 314, 318, 320, 323, 324, 328, 351, 353, 355, 359, 360, 361, 386, 387, 389, 391, 392, 393, 411, 413, 415). The Court heard helpful oral argument on January 22, 2019. (D.I. 417).

## I.    BACKGROUND

On August 8, 2016, Zimmer Surgical, Inc. and Dornoch Medical Systems, Inc. (collectively, "Zimmer") filed suit against Stryker Corporation and Stryker Sales Corporation (collectively, "Stryker") for infringement of U.S. Patent No. RE 44,920 ("the '920 patent"). (D.I. 1). On May 22, 2018, Stryker filed counterclaims against Zimmer Surgical, Inc., Dornoch Medical Systems, Inc., Zimmer Inc., and Zimmer U.S. Inc. (also collectively, "Zimmer") for infringement of U.S. Patent No. 9,579,428 ("the '428 patent") which was applied for and issued during the pendency of this suit. (D.I. 251).

The '920 patent is a reissue of U.S. Patent No. 7,892,420 ("the '420 patent"). It issued on June 3, 2014 and is directed to a fluid waste management system combining a movable waste fluid collection cart with a waste fluid disposal unit. The '920 patent claims priority to U.S. Patent No. 6,893,425 ("the '425 patent"). The '420 patent was filed as a continuation-in-part of the application for U.S. Patent No. 7,258,711 ("the '711 patent"). The '711 patent was filed as a divisional of application no. 10/090,221 on March 4, 2002, which issued as U.S Patent No. 6,893,425 ("the '425 patent"). The application for the '425 patent was published as Publication No. US 2003/0164600 ("the '600 publication").

In 2013, Dornoch sought to reissue the '420 patent and add new claims 15-41. These reissue claims are directed to a "system for handling waste fluid" that has two containers, each "being configured to collect liquid waste from the patient." ('920 patent, cls. 15, 29). Zimmer asserts only new reissue claims[1] against Stryker. Zimmer alleges that Stryker's Neptune 2 and Neptune 3 waste collection systems infringe the '920 patent.

The '428 patent issued on February 28, 2017 during the pendency of this litigation. The '428 patent is directed to a waste collection system with a removable intake manifold that prevents the release of uncollected waste still in the manifold. ('428 patent col. 1:31-37). Stryker accuses Dornoch's Transposal® UltrafleX Fluid Waste Management System ("the Ultraflex system") and IntelliCart system of infringing claims 1-6, 10, 14-16, 20, 23-25, 28 and 29 of the '428 patent. (D.I. 359 at vii).

The parties now move for summary judgment on a multitude of issues (D.I. 309, 310, 311, 312, 313, 316, 356) and for exclusion of certain expert testimony and opinion (D.I. 317, 321, 322, 327).

## II. LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

---

[1] '920 patent, cls. 15, 17-21, 24, 27-30, 32-36 and 39. (*See* D.I. 359 at vii).

to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## B. Daubert

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation"; the expert must have "good grounds" for his or her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.

> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) of the Federal Rules of Evidence whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (cleaned up).[2]

## III.    DISCUSSION

### A.  SUMMARY JUDGMENT

#### 1.  The '920 Patent is Entitled to a Priority Date of March 4, 2002

Zimmer moves for summary judgment that the '920 patent is entitled to a priority date of March 4, 2002. (D.I. 314 at 12). Stryker moved for summary judgment of invalidity because it argues that the '920 claims are not entitled to a priority date earlier than 2006 or, alternatively, August 2004. (D.I. 320 at 5, 7). The parties agree that entitlement to priority is a question of law to be determined at summary judgment and that no material disputes of fact exist. (D.I. 417 at 6:11-13, 12:3-7; D.I. 314 at 13 (citing case law)). Stryker asserts that Zimmer is not entitled to a March 4, 2002 priority date for two reasons: (1) the priority chain was broken when the application for the '420 patent (of which the '920 patent is a reissue) did not reference the original '425 patent application, and (2) the disclosure of the original application does not provide the required § 112 written description support for the asserted claims. (D.I. 320 at 5, 7; D.I. 359 at 8, 10). Zimmer argues that the '420 patent does not break the priority chain and that Stryker has failed to identify a single claim limitation in the asserted claims that lacks support in the original disclosure. (D.I. 314 at 13; D.I. 351 at 2, 5). I agree with Zimmer.

Where patent applicants seek a patent on an invention previously disclosed consistent with 35 U.S.C. § 112(a), the applicant is entitled to claim the priority date of the earlier-filed application. 35 U.S.C. § 120. Patent applicants seeking to claim the benefit of an earlier priority

---

[2] The Court of Appeals wrote under an earlier version of Rule 702, but subsequent amendments to it were not intended to make any substantive change.

date are required to include with the application a "specific reference to the earlier filed application." *Id.* The "'specific reference' requirement mandates each [intermediate] application in the chain of priority to refer to the prior applications." *Medtronic CoreValve LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014) (internal citations omitted). After a patent issues, a patentee may request a certificate of correction to correct "a mistake of clerical or typographical nature, or of minor character." 35 U.S.C. § 255. Claims in continuation-in-part applications may receive different priority dates. *Waldemar Link v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994).

**First**, the '420 patent application's failure to reference the original '425 patent does not break the priority chain of the '920 patent. Priority claims may be corrected by filing a reissue application under 35 U.S.C. § 251. *See Lucent Techs. Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1163, 1173 (S.D. Cal. 2007) (finding change in priority claim not broadening reissue); *see also Fontjin v. Okamoto*, 518 F.2d 610, 621 (Cust. & Pat. App. 1975) ("[A] reissue application filed for the sole purpose of perfecting a claim to priority does not broaden the scope of the claims of the original patent and is not in contravention of the requirements of section 251 even though filed more than two years after the patent grant.") (holding acknowledged in *Medrad, Inc. v. Tyco Healthcare Grp. LP*, 466 F.3d 1047, 1051 (Fed. Cir. 2006)). As priority chains can be corrected through reissue, it is illogical to determine that the application for the now-surrendered patent breaks the priority chain. Such a determination would defeat the legally recognized use of a reissue application to correct the priority chain in all cases.

Furthermore, longstanding PTO practice "has allowed patentees to use section 255 certificates of correction to correct section 120 priority chains since at least as early as 1976." *Word to Info, Inc. v. Google Inc.*, 140 F. Supp. 3d 986, 995 (N.D. Cal. 2015) (collecting cases).

6

"[I]nsofar as the PTO is concerned, a section 255 certificate of correction can be used to correct a section 120 chain of priority defect even after patent issuance." *Id.* Thus, Stryker's emphasis on the distinction between patents and applications is misplaced. Stryker cites cases concerning situations where the patentee did not attempt to correct the priority chain, either through reissue or a certificate of correction. *See Nat. Alts. Int'l, Inc. v. Iancu*, 904 F.3d 1375 (Fed. Cir. 2018); *Medtronic*, 741 F.3d 1359. These cases say little about whether a certificate of correction to a reissue patent is insufficient to correct the patent's priority chain.

Here, Zimmer obtained a certificate of correction for its priority claim in the reissued '920 patent. As priority claims may be corrected through reissue, the failure of the '420 patent's application to make the "specific references" required by § 120 cannot alone be sufficient to break the '920 patent's priority chain. Moreover, a certificate of correction is a legally acceptable way to correct unintentional errors in a patent's priority chain, even after the patent has been issued. *Word to Info*, 140 F. Supp. 3d at 993-94. Therefore, I determine that the '920 patent has an unbroken priority chain to the '425 patent application date, March 4, 2002.

**Second**, Zimmer has shown that the disclosure of the original application for the '425 patent provides the required § 112 written description support for the asserted claims of the '920 patent. Claims in a continuation-in-part application will be "entitled to the benefit of an earlier filed application only if the disclosure of the earlier application provides support for the claims . . . as required by 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995)); *see also Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302-03 (Fed. Cir. 1999) ("Different claims of [a CIP] application may therefore receive different effective filing dates. . . . Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the

parent application.").  The disclosure of the prior application must "convey with reasonable

clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession

*of the invention*" as later claimed.  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir.

1991) (emphasis in original).

Stryker points to the inclusion of a new embodiment in the specification as evidence that

the original disclosure would not satisfy the written description requirement.  (D.I. 320 at 5; D.I.

359 at 11).  However, the test is not whether the claims may also find support in new matter, but

whether the original disclosure is sufficient to support the claims.  *PowerOasis*, 522 F.3d at

1306.  Here, I determine that the original disclosure of the '425 patent provides sufficient written

description for the reissue claims.

Both sides agree that the '600 publication would anticipate the '920 patent.  (D.I. 314 at

17; D.I. 359 at 17).  Anticipation requires "each and every limitation [to be] found either

expressly or inherently in a single prior art reference." *King Pharms., Inc. v. Eon Labs., Inc.*, 616

F.3d 1267, 1274 (Fed. Cir. 2010).  Stryker asserts that there is a distinction between anticipation

and written description, whereby a reference may anticipate without satisfying § 112.  (D.I. 320

at 7).  However, Stryker has not demonstrated that support for the reissue claims is lacking here.

Stryker merely points to the existence of new matter in the specification and argues that the

claims are therefore not supported under *PowerOasis*.  (D.I. 320 at 6).  But *PowerOasis* is not

determinative here.  There, the original application did not provide a written description of

"customer interface" as set forth in the asserted claims.  *PowerOasis*, 522 F.3d at 1307-08.

There, in the continuation-in-part application, a new embodiment describing a vending machine

with a user interface located remotely from the vending machine influenced the construction of

the claim term "customer interface" to encompass more than the "user interface" located in the

vending machine in the original application. *Id.* at 1307-08. Here, however, Stryker points to elements that could be added to the cart *on top* of the claimed elements as evidence that the previous disclosure does not support the claims. These additional elements are claimed separately from the asserted claims. (*See, e.g.*, '920 patent, cl. 1). The original disclosure of the '425 patent supports each claim element of the asserted reissue claims in the '920 patent and the construction of those claim elements. Nor is the identification of a new utility enough for written description to fail where the claimed structure is the same. *In re Kirchner*, 305 F.2d 897, 903-04 (C.C.P.A. 1962). Therefore, the asserted claims of the '920 patent are entitled to priority date of March 4, 2002 and are not invalid based on art after that date.

### 2. Stryker has Not Demonstrated an Absence of Genuine Dispute of Fact as to Invalidity Under Section 112

Stryker moves for summary judgment of invalidity for lack of written description because the Asserted Claims (1) "do not recite any mechanism to regulate or control vacuum in the system required for the system to operate" and (2) use improper functional language. (D.I. 320 at 14-15). Zimmer argues that Stryker seeks to impose a rejected "essential element" test upon patentees and that a person of ordinary skill in the art would understand the scope of the functional language "independently adjustable" with reasonable certainty. (D.I. 351 at 9-10).

The written description requirement contained in 35 U.S.C. § 112, ¶ 1 requires that the specification "clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharm., Inc., v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (cleaned up). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* The written description

9

inquiry is a question of fact. *See id.* Although it is a question of fact, "[c]ompliance with the written description requirement . . . is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis*, 522 F.3d at 1307. "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015).

A unique branch of § 112 case law provides that where the specification clearly limits the scope of the inventions in ways that the claims do not, the patent is invalid for lack of written description. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) ("specification describes only medical valves with spikes" and the claims did not include a spike limitation); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) ("original disclosure clearly identifies the console as the only possible location of the control" but claims did not limit the location of the controls). Stryker argues that the asserted claims of the '920 patent are invalid for lack of written description under this line of cases.

Specifically, Stryker argues that "every single embodiment of the [fluid collection] cart in the ['920 patent] includes a vacuum control system (in the form of a valve control system and regulator) to regulate vacuum in the cart." (D.I. 320 at 14). However, the '920 specification only recites a single embodiment of the fluid collection cart. ('920 patent, col. 4:56-6:36).[3] This is unlike both *ICU Medical* and *Gentry Gallery* where the specification repeatedly made clear that the spikes in *ICU Medical* and the console location in *Gentry Gallery* were critical to the inventor's contribution and therefore to the scope of the claims. *Gentry Gallery*, 134 F.3d at 1479; *ICU Med.*, 558 F.3d at 1378. Here, the independent claims recite "at least one of the

---

[3] The specification does identify multiple uses for the fluid collection cart ('920 patent, col. 10:3-14), but does not set out a second embodiment for the invention.

suction ports being configured to provide at least two different levels of suction" and "a level of suction at one of the suction ports being independently adjustable of a level of suction at another of the suction ports." ('920 patent, cls. 15, 29). The specification provides an example of how to achieve these claims—by using a valve control system and regulator. ('920 patent col. 5:44-49). "It is well established that 'it is not necessary to claim in a patent every device required to enable the invention to be used.'" *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001) (quoting *Hughes Aircraft Co. v. United States*, 640 F.2d 1193, 1197 (Ct. Cl. 1980)). Unlike the spikeless claims in *ICU Medical* and the console location in *Gentry Gallery*, here, the exclusion of the valve control system and regulator from the independent claims neither changes how the system functions nor broadens the scope of the invention. Therefore, I determine that Stryker has not demonstrated that a reasonable jury could not determine that claims 15 and 29 of the '920 patent have sufficient § 112 support.

Stryker raises a second § 112 issue: whether claim 29 of the '920 patent is invalid for indefiniteness as a result of improper functional claiming. (D.I. 320 at 15). Specifically, Stryker contends that the level of suction being "independently adjustable" in claim 29 is improper functional claiming under *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255-56 (Fed. Cir. 2008). Zimmer asserts that claim 29 is not indefinite because "'independently adjustable' is not a relative term of degree, but instead an absolute statement about the vacuum, which one of ordinary skill would understand with reasonable certainty." (D.I. 351 at 11).

The Federal Circuit has stated that when determining whether functional language is indefinite "[w]hat is needed is a context-specific inquiry into whether particular functional language actually provides the required reasonable certainty." *BASF Corp. v. Johnson Matthey Inc.*, 875 G.3d 1360, 1366 (Fed. Cir. 2017). "[C]ase law is clear that an applicant is not required

to describe in the specification every conceivable and possible future embodiment of his invention." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001). "[A] vice of functional claiming occurs 'when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty.'" *Halliburton*, 514 F.3d at 1255 (quoting *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371 (1938)).

Here, the claim language "independently adjustable" would inform a person of ordinary skill in the art of the claim scope with reasonable certainty as it is not a relative term of degree, but rather a binary proposition. The suction level at one suction port must be able to be adjusted independent of another. This is not the unclear functional language of *Halliburton*. *See* 514 F.3d at 1253 (specification did not note the "degree of fragility of its invention"); *see also Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1307 (Fed. Cir. 2017) (claim recited "efficient" mixing but specification did not define "efficient"). Therefore, I determine that Stryker had not met its burden on summary judgment to show that claim 29 is indefinite because of improper functional claiming.

### 3. The '920 Patent is not Invalid for Obviousness-Type Double Patenting

Zimmer has moved for summary judgment that the asserted claims are not invalid over the claims of related U.S. Patent No. 7,090,663 ("the '663 patent") as a matter of law. (D.I. 314 at 18). Stryker cross-moves that the asserted claims are invalid for obviousness-type double patenting. (D.I. 359 at 17). As the parties were briefing summary judgment motions, Zimmer filed a terminal disclaimer of the '920 patent term. (D.I. 387 at 5; D.I. 388-1, Ex. 27). Stryker requested and received permission to file a supplemental motion for summary judgment of limitation of damages to post-disclaimer infringement. (D.I. 396; D.I. 410).

12

A patent may be invalid for obviousness-type double patenting where two patents are commonly owned and the later-expiring patent would have been obvious in light of the earlier-expiring patent. *See AbbVie Inc. v. Mathilda*, 764 F.3d 1366, 1373-74 (Fed. Cir. 2014). Zimmer asserted in its opening brief, without conceding obviousness, that the '920 patent and the '663 patent have the same expiration date because the patents both claim priority to the same date and have received no patent term extensions or adjustments. (D.I. 314 at 18-19, 18 n.5). Therefore, Zimmer asserts the '920 patent is not invalid for obviousness-type double patenting. (*Id.*). Stryker argues that the '920 patent is obvious in light of the related '663 patent, and that the '663 patent expires roughly two years earlier than the '920 patent because the '920 patent was reissued for the same patent term as the now-surrendered '420 patent. (*Id.*).

The '920 patent is not invalid for obviousness-type double patenting. Stryker's arguments regarding § 251 and reissue patent terms reflect a hypertechnical reading of the statute and ignore the general statutory limitation that a patent term may only be granted for a term of twenty years from the application's filing or priority date.[4] 35 U.S.C. § 154(a)(2). After the '920 patent issued, Zimmer obtained a certificate of correction correcting the priority date. (D.I. 315-1 at 336). Accepting Stryker's argument would result in the '920 patent receiving a twenty-two year patent term, instead of the mandated twenty. Moreover, Stryker's application of the law would eliminate the ability of parties to correct a priority claim through reissue proceedings.[5] As the '663 patent and the '920 patent claim the same priority date and have no patent term

---

[4] While a patent term may be extended for a variety of reasons, the '920 patent did not receive any extensions. (D.I. 314 at 19; D.I. 315-1 at 215, 370).
[5] As discussed previously, courts have endorsed correction of priority claims through reissue proceedings. *Fontjin*, 518 F.2d at 621 (acknowledged by *Medrad*, 466 F.3d at 1051); *see also Lucent*, 470 F. Supp. 2d at 1173.

extension, I determine that the patent term for both patents expires on the same day. Therefore, obviousness-type double patenting does not apply as a matter of law.[6]

As the '920 patent was not invalid for obviousness-type double patenting before Zimmer filed a disclaimer, the disclaimer does not prevent Zimmer from seeking damages before December 12, 2018. I am unconvinced that *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370 (Fed. Cir. 2017), clearly decides this issue. *Rembrandt* addressed the issue of parties using disclaimer to circumvent the marking requirement under 35 U.S.C. § 287. Specifically, the Federal Circuit held that disclaimer cannot retroactively circumvent a third party's rights and the patentee's *past* obligation to mark. It did not clearly determine that disclaimer could *never* be given retroactive effect. There is a distinction between an attempt to evade a past obligation through retroactive disclaimer versus using a terminal disclaimer to avoid invalidity by disclaiming *future* patent rights. The policy behind the doctrine of obviousness-type double patenting is to prevent parties from extending the term of their patent beyond the statutory term. Yet, the Federal Circuit has previously endorsed the use of terminal disclaimers to override invalidity during litigation. *See Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1347 (Fed. Cir. 2010) ("[A] patentee may file a disclaimer after issuance of the challenged patent or during litigation, even after a finding that the challenged patent is invalid for obviousness-type double patenting."); *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005) ("[a] terminal disclaimer can indeed supplant a finding of invalidity for double patenting"). *Boehringer* suggests that terminal disclaimer only creates issue of retroactivity when it is pursued after the earlier patent expires. 592 F.3d at 1347. In other words,

---

[6] As such, it is not necessary to determine whether the '920 patent would be obvious in light of the '663 patent. I do note, however, that Stryker devotes only a single sentence to the issue of obviousness, which cannot satisfy the clear and convincing burden of proof for invalidity defenses.

14

harm to others from obviousness-type double patenting only occurs after the earlier patent expires. I determine that Zimmer's disclaimer, therefore, does not limit Zimmer's past damages.

### 4. The '920 Patent is not Invalid for Reissue Recapture

Zimmer moves for summary judgment that the '920 patent claims do not violate the rule against recapture. Stryker cross-moves that the claims are invalid for improper recapture. Reissue proceedings "cannot be used to obtain subject matter that could not have been included in the original patent." *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1372 (Fed. Cir. 2006). "Under the 'recapture' rule, the deliberate surrender of a claim to certain subject matter during the original prosecution of the application for a patent 'made in an effort to overcome a prior art rejection' is not such 'error' as will allow the patentee to recapture that subject matter in a reissue." *Id.* at 1372-73.

The parties agree the recapture rule requires a three-step analysis. The Court must first determine "whether, and in what respect, the reissue claims are broader" than the original patent claims. *Id.* at 1373. Second, the court must determine whether the "broader aspects of the reissue claims relate to subject matter surrendered in the original prosecution." *Id.* The surrender at this second step must be deliberate. *Id.* at 1372-73. Absent "evidence that an amendment or cancellation was 'an admission that the scope of that claim was not in fact patentable,'" surrender is not deliberate. *Medtronic Inc. v. Guidant Corp.*, 378 F. Supp. 2d 503, 518 (D. Del. 2005), aff'd 465 F.3d 1360 (Fed Cir. 2006) (internal citations omitted). Third, if surrender is deliberate, the court then determines "whether the reissue claims were materially narrowed in other respects" to avoid the recapture rule. *Medtronic*, 465 F.3d at 1373.

Stryker has asserted a defense that the asserted '920 claims violate the recapture rule in light of an amendment made during the prosecution of the '663 patent. The '663 patent is a

15

divisional of the '425 patent and also claims priority to the '425 patent. (D.I. 315-1 at 370). Stryker's asserted defense is based upon dependent claim 6 of the '663 patent, which depends from claim 5, which depends from claim 1. (D.I. 359 at 20). During prosecution, the Examiner rejected claims 1, 2, 4, and 5 as obvious. (D.I. 362-1 at 321-27). The Examiner did not reject claims 6-8, instead stating, "Claims 6-8 are objected to as being dependent on a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." (*Id.* at 327). Zimmer did not rewrite claim 6 as an independent claim but amended claim 1 to overcome the obviousness objection. (*Id.* at 332-34). Stryker cites this amendment as the basis for its recapture defense.

Zimmer argues that Stryker's recapture defense fails as a matter of law because Stryker cannot demonstrate the deliberate surrender of subject matter in claim 6 to overcome a prior art rejection. Specifically, Zimmer argues that claim 6 was never rejected under the prior art, and the amendment to claim 1 cannot be the "deliberate surrender" of claim 6 subject matter under the recapture rule. I agree with Zimmer. The first step of the recapture analysis asks whether and in what aspect the reissued claims of the '920 patent are broader than those of the '663 patent. Stryker asserts the reissued claims are broader than the '663 patent. Zimmer states that I need not address this point because step two of the analysis is determinative. I agree.

The second step of the recapture analysis asks whether there was any deliberate surrender of a claim to certain subject matter to overcome a prior art rejection. I determine there was not. The Examiner specifically provided that claim 6 was allowable if rewritten in independent form. The fact that Zimmer amended claim 1 to overcome a separate prior art rejection does not equate to a deliberate surrender of the subject matter deemed allowable under claim 6. There must be evidence that an amendment or cancellation was an admission that the scope of that claim was

not in fact patentable for surrender to be deliberate. *Medtronic*, 378 F. Supp. 2d at 518. Here, the evidence does not indicate that the amendment of independent claim 1 was an admission that the scope of claim 6 was not in fact patentable. Because I have determined that there was no deliberate surrender under step two of the recapture analysis, I need not continue to step three. The asserted claims of the '920 patent are not invalid for reissue recapture.

### 5. Stryker Has Not Demonstrated an Absence of Genuine Dispute of Fact as to Whether the Terry Reference Invalidates the '920 Patent

Stryker asserts that the '920 patent is invalid as anticipated by or obvious in light of the Terry patent as a matter of law, even with a 2002 priority date.[7] (D.I. 320 at 9). Zimmer asserts that factual issues preclude summary judgment. (D.I. 351 at 6). A patent claim is anticipated "if each and every limitation is found either expressly or inherently in a single prior art reference." *King Pharms., Inc. v. Eon Labs., Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010). Patents are presumed valid and invalidity must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011).

**First**, Stryker has not shown an absence of disputes of fact as to whether the Terry Reference anticipates claims 15, 17, 18, 20, 21, 27, 29, 30, 32, 33, 35, and 36. There is a dispute over two claim elements: (1) "at least one of the suction ports being configured to provide at least two different levels of suction" and (2) "a level of suction at one of the suction ports being independently adjustable of a level of suction at another of the suction ports." (Ex. 504 at 30). Zimmer asserts that the claims of the '920 patent "require active suction control and independent adjustment when a vacuum is applied and that Terry discloses no such thing." (D.I. 351 at 7).

---

[7] Stryker asserts that Claims 15, 17, 18, 20, 21, 27, 29, 30, 32, 33, 35 and 36 are anticipated by the Terry Patent. (D.I. 320 at 9). Stryker asserts that the Terry Patent anticipates Claims 19, 28 and 34 or otherwise renders them obvious as a matter of law. (D.I. 320 at 12). Finally, Stryker asserts that the Terry Patent renders Claims 24 and 39 obvious. (D.I. 320 at 13).

Stryker asserts that the Terry reference "satisfies these limitations via 'control levers 44' that separately control the vacuum level at each of two suction ports on the cart." (D.I. 320 at 10.) "Disputed material issues of fact concerning how one of ordinary skill in the art would understand disclosure of a particular technology mandates denial of summary judgment of anticipation." *Robocast, Inc. v. Apple, Inc.*, 39 F. Supp. 3d 552, 564 (D. Del. 2014) (citing *Osram Sylvania v. Am. Induction Techs.*, 701 F.3d 698, 706 (Fed. Cir. 2012). This is such a case. Moreover, there are factual disputes regarding whether the Terry reference discloses every limitation of independent claims 15 and 29. (D.I. 351 at 70). Stryker's motion for summary judgment of invalidity of claims 15, 17, 18, 20, 21, 27, 29, 30, 32, 33, 35, and 36 is therefore denied.

**Second**, Stryker has not demonstrated an absence of genuine factual disputes as to whether the Terry Reference anticipates claims 19, 28 and 34 or otherwise renders them obvious as a matter of law. Nor has Stryker shown an absence of dispute of fact as to whether the Terry Reference renders claims 24 and 39 obvious. These claims are dependent claims and depend from claims 15 and 29. "As a dependent claim contains at least one more limitation than the independent claim upon which it depends, it cannot be invalid under § 102 . . . if the independent claim upon which it depends is not anticipated." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 260 (E.D.N.Y. 2009); *see also Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 2012 WL 604138 (E.D. Cal. Feb. 23, 2012). As there are genuine disputes of fact as to whether claims 15 and 29 are anticipated, there are also genuine disputes of fact as to the dependent claims.

Similarly, if an independent claim is nonobvious, then the dependent claim is also nonobvious. *In re Fine,* 837 F.2d 1071, 1076 (Fed. Cir. 1988) ("A claim that depends from a non-obvious independent claim is non-obvious because it contains all the limitations of the

18

independent claim, plus a further limitation."). Thus, I do not need to consider "arguments that certain dependent claim limitations would have been obvious where the base claim has not been proven invalid." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1375 (Fed. Cir. 2013). As there are genuine disputes of fact as to whether 15 and 29 are invalid for obviousness, those disputes also exist for the dependent claims. Thus, Stryker has not met its burden.

### 6. The '920 Patent is not Invalid for Violating Original Patent Requirement

35 U.S.C. § 251 provides, "Whenever any patent is, through error, deemed wholly or partly inoperative or invalid . . . by reason of a patentee claiming more or less than he had a right to claim," the PTO may "reissue the patent for the invention disclosed in the original patent." The Federal Circuit has stated that "the essential inquiry under the 'original patent' clause of § 251 . . . is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees." *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1484 (Fed. Cir. 1998) (quoting *In re Amos*, 953 F.2d 613, 618 (Fed. Cir. 1991)). The Federal Circuit has explained that the inquiry "is analogous to the written description requirement under § 112, ¶ 1," *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1367 (Fed. Cir. 2009), but that "the specification must clearly and unequivocally disclose the newly claimed invention as a separate invention." *Antares Pharma v. Medac Pharma*, 771 F.3d 1354, 1362 (Fed. Cir. 2014). "Whether the claims of a reissue patent violate 35 U.S.C. § 251, and thus are invalid, is a question of law. . . ." *N. Am. Container v. Plastipak Packaging,* 415 F.3d 1335, 1349 (Fed. Cir. 2005).

Stryker moves for summary judgment that the asserted reissue claims violate the original patent requirement. (D.I. 320 at 16-17). Specifically, Stryker, relying on *Antares*, asserts that the '920 patent "does not explicitly describe a collection cart and disposal unit <u>without</u> the

features of the '420 patent." (*Id.* at 17). Zimmer argues that Stryker overextends *Antares* because the court there relied on the failure of the specification to disclose "the particular combinations of safety features claimed on reissue." (D.I. 351 at 14 (quoting *Antares*, 771 F.3d at 1363)).

I agree with Zimmer. The '920 patent specification expressly discloses every limitation of the asserted claims. It discloses a collection cart and disposal unit without the features that Stryker identifies as new matter in the '420 patent. ('920 patent, col. 4:64-6:40, 6:55-7:21, 8:8-20, 9:62-10:2). Therefore, the original '420 patent did more than merely suggest or indicate the invention of a collection cart and disposal unit system in the specification. This is not a case like *Antares* where the focus of the claims shifted from the original patent (jet injectors) to the reissue patents (safety features). 771 F.3d at 1362-63. Moreover, I understand the '420 patent to describe "independently adjustable" suction at the suction ports or suction ports arranged to have at least two levels of suction within the specification, though it does not do so explicitly. (*See* '420 patent, col. 6:4-28). The '420 patent describes a collection cart and disposal unit. The reissue claims of the '920 patent are therefore directed to the invention disclosed in the original patent and are not invalid under the original patent requirement. Stryker's motion for summary judgment is therefore denied.

### 7. Intervening Rights

Zimmer moves for summary judgment that Stryker is precluded from asserting an intervening rights defense. (D.I. 314 at 22). Stryker cross-moves for summary judgment that it is entitled to intervening rights as a matter of law and independently moves for summary judgment that Zimmer is only entitled to damages on manifolds used with accused systems sold after the '920 patent issued. (D.I. 320 at 21; D.I. 359 at 23).

20

The doctrine of intervening rights "provides an accused infringer with the absolute right to use or sell a product that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993); *see* 35 U.S.C. § 252; *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012). "[I]ntervening rights is an affirmative defense, and as such, the burden of proof rests on the party raising the defense." *Intest Corp. v. Reid-Ashman Mfg., Inc.*, 66 F. Supp. 2d 576, 582 (D. Del. 1999).

Stryker argues that Zimmer is not entitled to damages on manifolds purchased for use with systems purchased before the '920 patent reissued or before this lawsuit was filed, because (1) the Asserted Claims were not present in the original patent, and (2) Zimmer did not mark its products or provide notice of the '920 patent under 35 U.S.C. § 287 until it filed suit in August 2016. (D.I. 320 at 21-22). Zimmer argues that Stryker should be foreclosed from seeking a reduction in damages due to intervening rights because Stryker has failed to produce certain financial sales information. (D.I. 314 at 22). Zimmer argues that to prove its defense of intervening rights, "Stryker must prove both that a cart was sold to a customer during the relevant time and that a later sold manifold was sold for use with that particular cart." (D.I. 351 at 19). Zimmer asserts that when "damages cannot be ascertained with precision because the evidence available from the infringer is inadequate, doubt is resolved against the infringer." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 2008 WL 6873811, at *5 (C.D. Cal. Jan 3, 2008). The only sales data produced by Stryker was cumulative sales data. Zimmer alleges that this is insufficient to establish an intervening rights defense. (D.I. 314 at 23).

Stryker responds, "The only question to ask under [the intervening rights] test is whether claims of the original patent which are repeated in the reissue patent are infringed." *Austin Powder Co. v. Atlas Powder Co.*, 593 F. Supp. 208, 215 (D. Del. 1984) (quoting *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 829-30 (Fed. Cir. 1984)). Stryker also contends that the customer specific data does not describe which manifolds customers use with fluid carts and that, if Zimmer believed that data was necessary, it should have moved to compel production during discovery. (D.I. 359 at 28-29).

Genuine disputes of material fact preclude summary judgment on Stryker's intervening rights defense. The parties dispute whether any of the manifolds on which Zimmer seeks damages were sold for use with an accused cart purchased before the '920 patent reissued. (D.I. 314 at 23; D.I. 359 at 26). As there may be no manifolds for which an intervening rights defense could apply, summary judgment that Stryker is entitled an intervening rights defense as a matter of law is inappropriate.

However, it is improper to foreclose Stryker from offering its intervening rights defense when Zimmer did not compel production of evidence it now states is necessary. The cases Zimmer cites in support of its arguments do not support the imposition of such a harsh penalty upon Stryker. Rather, the cases suggest that an adverse inference may be appropriate where evidence has been destroyed or not maintained. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996). Nor at this point can I conclude that there is no evidence to support the damages conclusion. *See Revolution*, 2008 WL 6873811, at *4-8. Here, Stryker provides expert testimony based on underlying data to establish the number of manifolds it believes will be subject to intervening rights. (D.I. 362-1, Ex. 1019 at ¶¶ 29, 32-35, 39-40). A reasonable jury

could determine that those manifolds are not subject to damages. Therefore, summary judgment is inappropriate, and Stryker is not foreclosed from presenting an intervening rights defense.

### 8. Zimmer may Pursue Lost Profits

Stryker moves for summary judgment that Zimmer is not entitled to lost profits on the '920 patent because Zimmer has failed to establish the absence of noninfringing alternatives. (D.I. 320 at 17). Zimmer opposes the motion for two reasons: (1) that in a two-supplier market, there is a presumption of causation for lost profits, and (2) that a dispute as to the number of suppliers in the relevant market raises a factual issue. (D.I. 351 at 14-15).

I determine that there are material disputes of fact that preclude summary judgment. Specifically, the parties dispute whether there are any noninfringing alternatives.[8] I determine that a reasonable jury could determine that there is an absence of noninfringing alternatives given the circumstances of the market recall that Dr. Mody refers to in her expert report. (D.I. 352-1 at 34). Therefore, I deny Stryker's motion for summary judgment of no lost profits.

### 9. Zimmer may Pursue Damages for Manifold Sales

Stryker moves for summary judgment that Zimmer is not entitled to damages for any manifold sales because the manifolds are unpatented products and not required for infringement. (D.I. 320 at 19-20). Zimmer argues that its technical expert, Mr. Meyst, has testified that the manifolds are part of the claimed infringing system because the manifold ports are the suction ports required by the claims. (D.I. 351 at 16-17). Zimmer also asserts that even if a manifold is not necessary for infringement, it is still entitled to damages for the manifold sales under a functional and economic "single-unit" theory. (*Id.* at 17).

---

[8] Stryker has moved to exclude certain testimony of Zimmer's experts regarding noninfringing alternatives.

There is a genuine dispute of material fact which precludes summary judgment as to damages on manifold sales. Stryker contends that its accused product, the Neptune 2 fluid cart, does not infringe. Zimmer's expert offers two alternate theories on infringement: that the manifold operates as the claimed suction port, or the face plate on the accused product is the claimed suction port. (D.I. 351 at 16). A reasonable jury could find from the expert testimony that the manifold, when used in the system, is the suction port claimed, and therefore is part of the infringing system as a whole. Thus, there is a dispute of material fact as to whether Stryker's manifolds are part of the infringing system and subject to damages.

If the manifolds are not part of the infringing system, Zimmer is not entitled to lost profits damages for the manifolds under a "convoyed sales" analysis as a matter of law. In *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538 (Fed. Cir. 1988), the Federal Circuit "explained that the entire market value rule was a principle of patent damages that defined a patentee's ability to recover lost profits on unpatented components typically sold with a patented item." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371 (Fed. Cir. 2004). The entire market value rule "permits recovery of damages based on the value of a patentee's entire apparatus containing several features when the patent related feature is the basis for customer demand." *Rite-Hite*, 56 F.3d at 1549. Thus, "[a] patentee may recover lost profits on . . . a convoyed sale[] if both the patented and unpatented products 'together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit'" and the patent-related feature drives demand for the functional unit as a whole. *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) (quoting *Rite-Hite*, 56 F.3d at 1550).

Here, there is a functional relationship between the manifolds and the fluid carts—the fluid carts cannot operate to achieve their function without a manifold. (D.I. 351 at 17).

Therefore, the manifolds and the fluid carts are "analogous to parts of a single assembly or a complete machine," *Juicy Whip*, 382 F.3d at 1372, that "function together to achieve one result," *Rite-Hite*, 56 F.3d at 1551. However, there is no material dispute of fact that the patented features—independently adjustable suction and two canisters—do not drive demand for the functional unit as a whole. (D.I. 333, Ex. 1000 at 241-45, Ex. 1003 at 248-252, 271-275; D.I. 329, Ex. E, ¶ 54). Therefore, as Zimmer cannot show that its patented features drive customer demand, it cannot show entitlement to convoyed sales.

Stryker also moves for summary judgment that damages on manifold sales should be limited to those sold for use with Neptune fluid carts sold after this lawsuit was filed because Zimmer did not satisfy the marking or notice requirement of 35 U.S.C. § 287. (D.I. 320 at 22). Zimmer opposes the motion, arguing that Stryker has failed to tie any post-notice manifold sales to Neptune carts sold pre-suit. (D.I. 351 at 19). As discussed above, there is a genuine dispute of material fact as to whether any of the manifolds on which Zimmer seeks damages were sold for use with an accused cart purchased before Stryker received notice of the '920 patent.

### 10. Willful Infringement

Stryker moves for summary judgment of no willful infringement of the '920 patent. (D.I. 320 at 23). "[A]n infringer's subjective bad faith alone may support an award of enhanced damages" under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016). A patentee need only prove "subjective willfulness alone – i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" *WesternGeco LLC. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 136 S.Ct. at 1930).

Stryker argues that "Zimmer has not identified any 'egregious' behavior by Stryker that would rise to the level of willful infringement." (D.I. 320 at 23). Implicit in Stryker's briefing is the assertion that Stryker's continued sale of the accused products after the filing of this suit is not egregious. (*See id.* (stating Zimmer only identified continued sale of accused products)). Zimmer argues that a jury could infer that Stryker has engaged in egregious behavior beyond infringement from Stryker's continued sale, marketing, and refusal to design around the '920 patent to avoid infringement after this suit was filed. (D.I. 351 at 20-21).

To determine whether willful infringement has occurred, the correct inquiry is the "subjective willfulness" of the infringer, not whether the infringement itself was "egregious." *Valinge Innovation AB v. Halsted New England Corp.*, 2018 WL 2411218, at *7 (D. Del. May 29, 2018). Taking the evidence in the light most favorable to Zimmer, as I am required to do, I determine that a reasonable jury could find Stryker's post-filing conduct to be willful. Zimmer has alleged that Stryker continues to infringe, has failed to undertake efforts to design around the '920 patent, and has asserted defenses that it knows to be unreasonable.[9,10] (D.I. 351 at 21). A reasonable jury could, therefore, find that Stryker "acted despite a risk of infringement that was 'either known or so obvious that it should have been known to [Stryker].'" *WesternGeco LLC*, 837 F.3d at 1362 (quoting *Halo*, 136 S.Ct. at 1930). Accordingly, the Court will deny Stryker's motion for summary judgment of no willful infringement.

---

[9] Zimmer alleges that Stryker has "opted to assert supposed noninfringing alternatives that Stryker itself refused to market during the FDA recall" of its accused infringing product. (D.I. 351 at 21).

[10] Zimmer needs to get my express permission before it offers any evidence to the jury that suggests Stryker's trial counsel are asserting unreasonable defenses.

**11. Stryker has not Proven that Zimmer Infringes the '428 Patent**

Stryker has filed a motion for summary judgment that Zimmer infringes claims 14 and 23 of the '428 patent as well as the associated dependent claims. (D.I. 320 at 2). Zimmer filed a motion for summary judgment that the claim term "receiver" is a means-plus-function element and that Zimmer does not infringe under that construction. (D.I. 314 at 25).

### a. Claim Construction of "Receiver"

The parties agree that the term "receiver" needs construction. (D.I. 314 at 25; D.I. 320 at 27). Stryker contends that the ordinary meaning of receiver is "receptacle." (D.I. 320 at 27). Zimmer asserts that "receiver" is a means-plus-function element under 35 U.S.C. § 112 ¶ 6 and should be defined by its function: receiving the manifold housing. (D.I. 314 at 26). The Court will construe the term "receiver" in the '428 patent to mean "receptacle" for the following reasons.

When determining whether a term is subject to 35 U.S.C. § 112 ¶ 6, "[t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for the structure." *Williamson v. Citrix Online*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). Where the claim does not use the word "means," there is a presumption that § 112, ¶ 6 does not apply. *Id.* at 1348-49. This presumption may be overcome "if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (cleaned up).

The term "receiver" does not meet this test. The claims do not use the word "means" and therefore, absent evidence otherwise, the term is not a means-plus-function element. Zimmer has not shown that the term "receiver" fails to recite sufficient structure for performing that function.

I determine that the plain and ordinary meaning of "receiver" is clear from the intrinsic record. The claim language itself provides sufficient structure to inform a person of ordinary skill in the art of the structure of the receiver. Claims 1, 14, and 23 explain that the receiver is "shaped to have: a bore dimensioned to receive" the manifold housing, "the bore having an open distal end into which said manifold is inserted. . . ." ('428 patent, col. 21:46-50). The receiver is "formed with complementary alignment features that engage when the manifold is inserted. . . ." (*Id.* 21:56-58). The specification clearly discusses components of the receiver in various embodiments and includes four columns describing the preferred embodiment of the receiver and its components. (*Id.* 5:14-9:15). Thus, I determine that the appropriate construction of "receiver" is "receptacle."

### b. There are Material Disputes of Fact Precluding Summary Judgment

There are genuine disputes of material fact that preclude summary judgment on infringement of the '428 patent. First, as to claims 14 and 23 of the '428 patent, there are genuine disputes of fact as to whether (1) the "fluid communications path from the receiver bore into first canister" limitation is met, (2) the "proximal end in fluid communication with [the] first canister" limitation is met, and (3) the canister caps or lids can be a receiver. The parties' experts disagree as to whether the opening of the receiver bore in the canister is the fluid communications path. (D.I. 351 at 26-27). Moreover, the experts have testified as to the manifolds being in fluid communication with the canister, but Zimmer's expert contends that the proximal end of the receiver bore is not in fluid communication with the canister. (*Id.* at 28). Additionally, Zimmer points to testimony from Stryker's expert, Mr. Sheehan, that a receiver cannot be a cap. (D.I. 334 at 415). Zimmer argues that the alleged infringing receiver operates

as a cap, and therefore cannot meet the claim terms of the '428 patent. (D.I. 351 at 29).

Therefore, there is a genuine dispute of material fact as to whether Zimmer infringes claims 14

and 23 the '428 patent.

Second, as to claim 14 of the '428 patent, there is an additional dispute as to whether the

manifolds satisfy the outlet at the proximal end of the housing requirement of the claims.

Specifically, Dr. Layton has explained that Zimmer's systems do not have a manifold as required

by claim 14. (D.I. 332, Ex. 515 ¶ 65). Stryker contends that the opening does not need to be

"part of" the manifold housing. (D.I. 320 at 33). Therefore, there is a genuine dispute of

material fact as to whether this claim limitation is satisfied and summary judgment is not

appropriate.

### 12. Stryker has Not Shown that Zimmer Cannot Prove Invalidity based on Prior Art

Stryker seeks summary judgment that the asserted claims of the '428 patent are not

obvious because Zimmer cannot establish that the prior art includes multiple elements of the

'428 claims. (D.I. 320 at 34). Zimmer argues that factual issues preclude summary judgment.

(D.I. 351 at 33). Obviousness is a question of law based on underlying factual issues, including

the scope and content of the prior art, the differences between the claims and the prior art, the

level of ordinary skill in the art, and objective indicia of nonobviousness. *Graham v. John Deere

Co.*, 383 U.S. 1, 17-18 (1966).

I agree with Zimmer that there are material disputes of fact that preclude summary

judgment. Stryker identifies two elements of the '428 patent claims that it asserts Zimmer

cannot show were present in the prior art: (1) the independent claims require a manifold to sit at

an angle within a receiver, and (2) the independent claims require that when the manifold is

rotated about the receiver bore axis from a first position to a second position, the "outlet opening [when the manifold is in the second position] is located below the position of the outlet opening when [the manifold] is in the first rotational position." ('428 patent, cl. 1, 14, 23). However, Zimmer has identified pieces of prior art, which its experts contend teach these elements of the '428 patent claims. (D.I. 351 at 34-35).

First, Zimmer's expert Dr. Layton identified the Adahan reference, which he asserts teaches that fluid should enter a waste container at an angle rather than vertically. (D.I. 332, Ex. 525 at 5:5-33). Moreover, a disagreement between the experts about what the Adahan reference discloses is a factual dispute about the content of the prior art. *Graham*, 383 U.S. at 17-18. Second, Zimmer's expert identifies the use of certain lids, the CL100 and CL200, with the prior art transposal system as teaching the outlet opening moving from one position to a position located below.[11] (Ex. 514 ¶¶ 169-175). Therefore, because Zimmer has identified genuine disputes of material fact, summary judgment of invalidity on the '428 patent is inappropriate.

## B. *DAUBERT* MOTIONS

### 1. Zimmer's Motion to Exclude Dr. Vellturo's Opinions

Zimmer has moved to exclude Dr. Vellturo's opinions (1) relying on the settlement licensing agreements between Dornoch Medical Systems, Bemis Manufacturing Company, and the Educator Partnership to establish a reasonable royalty rate, (2) on the damages for alleged infringement of the '428 patent calculated from an incorrect date, and (3) on calculations using speculative manifold-per-day-rates, assumed equipment life expectancies, or unestablished

---

[11] Stryker asserts that the IPR proceedings determined that there is no prior art showing an outlet opening moving "below" where it was originally. (D.I. 391 at 18). However, a denial of institution of IPR proceedings is not a decision on the merits. Moreover, as Zimmer notes, the IPR did not include all of the prior art asserted in this case. (D.I. 351 at 35 n.5).

discount rates. (D.I. 323 at 19). Stryker opposes the motion arguing that (1) the Bemis licensing agreement "is the most relevant in the record and is technically and economically comparable to the accused products and the patents-in-suit" (D.I. 360 at 1), and (2) Dr. Vellturo's damages calculations are legally proper and disagreements between experts are a matter of weight. (*Id.*).

### a. Bemis Licensing Agreement

"In determining the reasonable royalty, an expert witness may rely on existing royalty agreements entered into at arms-length[,] as long as those agreements are sufficiently comparable to the hypothetical license at issue in suit." *W.L. Gore & Assocs. v. C.R. Bard*, 2015 WL 12731924, at *6 (D. Del. Nov. 4, 2015). To show that a license is "sufficiently comparable," the expert must demonstrate "how similar or dissimilar the patented technology" covered by the prior licenses is to the patents-in-suit, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1331 (Fed. Cir. 2009), and "account for the technological and economic differences" between the patented technology covered by the licenses and the patent-in-suit, *ResQNet.com, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010). Though "there is no per se rule barring reference to settlements simply because they arise from litigation," *AstraZeneca AB v. Apotex*, 782 F.3d 1324, 1336 (Fed. Cir. 2015), the Federal Circuit has questioned "the propriety of using prior settlement agreements to prove the amount of a reasonable royalty." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012) (noting "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages"); *see also M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016) ("Federal Circuit precedent is hostile toward using litigation settlement agreements in proving a reasonable royalty, except in limited circumstances.").

Zimmer moves to exclude Dr. Vellturo's opinions to the extent he relies on the 2006 Bemis License agreements, on the grounds that this license is not technologically or economically comparable to the patent-in-suit. (D.I. 323 at 8-14). Zimmer asserts that Dr. Vellturo has failed to provide a basis for technological comparability. (D.I. 323 at 12). Zimmer further argues that the license is not economically comparable to either the '920 or '428 patents because it licenses the rights to multiple patents, sets multiple royalty rates, is a settlement agreement, and was entered eight to eleven years before the hypothetical negotiations—a much different context than a hypothetical negotiation involving two willing licensors. (D.I. 323 at 7-9). Stryker maintains that Dr. Vellturo's opinion, relying on Stryker's technical expert, establishes that "the 2006 Bemis License is the most relevant license in the record and is economically and technologically comparable to the accused products and the patents-in-suit." (D.I. 360 at 5).

The Bemis License Agreement between Dornoch, Bemis, and Educator Partnership took place on May 10, 2006, eight to eleven years before the hypothetical negotiations at issue here. (D.I. 325-3 at 20). Dornoch agreed to pay the licensors an initial lump sum payment of $100,000, a second lump sum payment of $105,000 before April 1, 2007, and a royalty of 1% on all sales of the licensed products with the minimum royalty being $100,000 each year, in return for which Dornoch received a non-exclusive worldwide license for three patents in relation to specific products. (D.I. 325-3 at 21-24). Moreover, this agreement was a follow-on agreement to a previous settlement agreement and therefore arose from litigation. (*See* D.I. 325-3 at 20 (reciting history of infringement allegations against Dornoch, Dornoch's assertions of invalidity and non-infringement, and that "the Parties have settled this controversy by entering into this

License Agreement to avoid the expense, inconvenience, uncertainties and delay of further proceedings called for by the Settlement Agreement.")).

Dr. Vellturo has not established "that the technology and value of the patents licensed in the prior agreements are comparable to the technology and value of the patent-in-suit." *Lucent*, 580 F.3d at 1331. Dr. Vellturo uses broad and nebulous language to describe the technological comparability of the patents in the Bemis license. *See* D.I. 325-1 at 112 ("At a broad level, the patents licensed . . . relate to inventions used to help reduce user exposure to surgical waste, and thus provide benefits along the same general lines as . . . the '428 patent."); D.I. 325-2 at 66 ("I similarly find that the inventions licensed . . . provide benefits along the same general lines as the '920 Patented Invention."). Stryker's technical expert, Mr. Sheehan, also does not provide any analysis of comparability. Instead, he generally identified the subject matter of the Bemis patents. (D.I. 363-1 at 42 (stations for draining and cleaning canisters, specially designed canisters, and a conduit with cleaning fluid placed within the canisters)). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79. Therefore, Dr. Vellturo has failed to establish technological comparability of the Bemis license.

Additionally, Dr. Vellturo has failed to show that the Bemis license is economically comparable to the patents-in-suit. First, the Bemis license was "made in the context of settling a litigation dispute, and thus did not reflect the royalty the parties would have reached just before infringement began." *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 4490706, at *1 (D. Del. Aug. 25, 2016). "Without analysis of the litigation, the conclusion cannot be based on 'sound economic and factual predicates.'" *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 143 (D. Del. 2013). Dr. Vellturo engages in no analysis of the underlying litigation and

how it may have affected the royalty rate. (D.I. 325-1, Ex. 4, ¶¶ 83-93). Neither does Dr. Vellturo address the effect of the fixed payments in addition to the royalty rate, the effect of multiple patents being included in the license, or the fact that this license was one of a series of licenses. (*Id.*). Because Dr. Vellturo's analysis fails to demonstrate how technologically and economically similar or dissimilar the Bemis license is, it is unreliable. Thus, Dr. Vellturo is precluded from relying on the Bemis license in his reasonable royalty analysis.

### b. Damages for the '428 Patent

Zimmer moves to exclude Dr. Vellturo's damages analysis for the '428 patent as unreliable because he uses an incorrect starting date. (D.I. 323 at 14). Stryker opposes the motion on the grounds that Dr. Vellturo's methodology is reliable and it is a matter of accounting to adjust the calculation using the correct start date. (D.I. 360 at 13). I agree with Stryker. The start date for damages, at least in this case, is a legal issue. Moreover, Dr. Vellturo, in his reply report agreed with Dr. Mody's adjusted damages calculation using his methodology and the March 7, 2017 start date. (D.I. 363-1 at 13). Therefore, because there is no objection to the underlying methodology, exclusion is unwarranted. *Sys. Dev. Integration, LLC v. Comput. Sci. Corp.*, 886 F. Supp. 2d 873, 887 (N.D. Ill. 2012).

### c. Intervening Rights

Zimmer moves to preclude Dr. Vellturo from testifying on calculations derived from using manifold-per-day rates, equipment life expectancies, or discount rates. (D.I. 323 at 15). Specifically, Zimmer argues that Dr. Vellturo's opinions regarding manifold-per-day use rates and equipment life expectancies "are unreliable because they are premised on speculation and incorrect assumptions." (D.I. 323 at 18). Stryker argues that Dr. Vellturo's use rate was based

"on Stryker data . . . [and] the testimony of Stryker witnesses" and his equipment lifespan was based on Stryker witness testimony. (D.I. 360 at 16-17).

"[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence." *Sensonics*, 81 F.3d at 1572. "[E]ven where defendant's records are not complete, damages may 'not be determined by mere speculation or guess.'" *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996). Dr. Vellturo's lifespan and use rate estimation does not appear to be mere speculation. He has pointed to specific evidence to support his estimations. (D.I. 325-2, Ex. 11 at ¶¶ 32-34). To the extent that Zimmer disputes Dr. Vellturo's analysis, it is an issue of weight appropriate for cross-examination. Dr. Vellturo's application of the discount rate is also an issue of weight, not admissibility. Dr. Vellturo sufficiently identified the basis and source for his discount rate. (D.I. 352-1, Ex. 11 at Ex. 9-A, n.3). Therefore, exclusion is unwarranted.

### 2. Zimmer's Motion to Exclude the Opinions of Mr. Sterne

Zimmer moves to preclude Mr. Sterne, a patent attorney, from offering his opinion on willful infringement, marking, and notice as to the '428 patent and on the priority date of the '920 patent. (D.I. 317).

### a. Opinions on Willful Infringement

Zimmer asserts that Mr. Sterne's opinions on willful infringement of the '428 patent should be excluded as unhelpful to the factfinder, irrelevant, and without factual basis. (D.I. 318 at 9, 11, 14). Stryker contends that Mr. Sterne is not a willfulness expert and that his opinions addressing opinions of counsel and issues understood or known to a reasonable patent attorney should not be excluded. (D.I. 361 at 6-7).

Mr. Sterne's testimony regarding the opinions of counsel produced by Zimmer is permissible to the extent he opines on the competency of the opinions of counsel as to the '428 patent. Despite Zimmer's contentions, Mr. Sterne's testimony does not deviate into technical territory and appears to be based on a reasonable methodology. To the extent Mr. Sterne has provided contrary opinions in other cases, that is a matter for cross-examination.

However, Mr. Sterne's opinion that Zimmer's reliance on the opinions of counsel was unreasonable is impermissible testimony on the ultimate issue of willfulness. "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Siring v. Oregon State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2014). Therefore, Mr. Sterne's expert opinions evaluating Zimmer's subjective reliance on the opinions of counsel are excluded.

### b. Marking/Notice

Zimmer asserts that Mr. Sterne has no basis for providing opinions in his report regarding notice or patent marking under 35 U.S.C. § 287. (D.I. 318 at 14). Stryker asserts that Mr. Sterne's statements regarding notice and marking are appropriate background to his assessment of Zimmer's reliance on the four opinions of counsel. (D.I. 361 at 16).

Mr. Sterne's expert report does not purport to offer an opinion on notice or marking. His report merely relies on documents within the record for underlying facts in his analysis of whether Zimmer's reliance on the opinions of counsel was reasonable. Mr. Sterne's analysis, sources, and conclusions can be tested through cross-examination. Therefore, exclusion is unwarranted.

### c. Certificate of Correction

Zimmer moves to exclude Mr. Sterne's opinions regarding intent to deceive the PTO in filing a certificate of correction because (1) expert testimony as to intent is improper, (2) Mr. Sterne provides no basis for his conclusion, and (3) Mr. Sterne uses an improper "reasonable patent attorney" standard. (D.I. 318 at 15-16). Stryker asserts that Mr. Sterne is not providing improper opinion on intent, but merely providing expert testimony regarding PTO practices and procedures. (D.I. 361 at 17-18).

I determine that Mr. Sterne's opinions regarding the '920 patent's priority claim and the filing of a certificate of correction are not entirely directed to intent. To the extent Mr. Sterne provides testimony on the opportunities for a reasonable patent attorney would have had to recognize and correct a priority claim, that testimony is permissible as it is helpful to the factfinder to evaluate the deposition testimony from Zimmer's prior patent counsel.

However, to the extent Mr. Sterne makes an explicit credibility determination regarding Zimmer's prior patent counsel's statements to the PTO (D.I. 319-1 at 51 ¶ 129), those opinions are impermissible. "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Siring*, 927 F. Supp. 2d at 1077. Thus, I will exclude ¶ 129 of Mr. Sterne's expert report as improper and unhelpful to the factfinder.

### 3. Stryker's Motion to Exclude Dr. Mody's Opinions

Stryker moves (1) to exclude Dr. Mody's reasonable royalty calculations because she fails to apportion to reflect the value of the patented invention, and (2) to exclude or to strike Dr.

Mody's addition of lost profit and reasonable royalty damages for Stryker's specimen collection manifolds in her reply report. (D.I. 328 at 2-3).

### a. Apportionment

Stryker moves to exclude Dr. Mody's reasonably royalty analysis as unreliable based on her failure to properly apportion between patented and unpatented components. (D.I. 328 at 5). Zimmer contends that Dr. Mody's analysis considered all of the changes between the Neptune 1 and Neptune 2 in determining how to apportion the value of the '920 patent and nonpatented features. (D.I. 353 at 4-5).

I determine that Dr. Mody's analysis does reflect an apportionment analysis to determine the value of the patented technology as required by law. Moreover, Dr. Mody's analysis applies a legally sound and verifiable methodology and appropriately relies on Mr. Meyst's technical opinions regarding the differences between the Neptune 1 and Neptune 2. (D.I. 354-1, Ex. 3 ¶¶ 81-93; Ex. 4, ¶¶ 428-432); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). The Federal Circuit does not limit apportionment to specific methodologies because flexibility is required to determine fact-dependent damages. *See, e.g., Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). To the extent that Stryker disagrees with Dr. Mody's apportionment analysis, it is an issue of the weight of the evidence and witness credibility. Therefore, Stryker's motion is denied as to Dr. Mody's reasonable royalty analysis.

### b. Specimen Collection Manifolds

Stryker moves to exclude Dr. Mody's opinion on damages for specimen collection manifolds because it was untimely disclosed in her reply report and legally flawed. (D.I. 328 at 9-10). Zimmer alleges that the disclosure was not untimely, Stryker suffered no prejudice

because its damages expert addressed specimen collection manifolds in his report, and inclusion of these manifolds in Dr. Mody's calculation of lost profits is proper. (D.I. 353 at 11-15).

Dr. Mody's addition of lost profits for specimen collection manifolds in her reply report is a violation of Federal Rule of Civil Procedure 26(a). In determining whether a violation of Rule 26(a) was substantially justified or harmless, courts consider the following factors: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the "*Pennypack* factors"). *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir.1977)). It bears emphasis that "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir.1994) (internal quotation marks omitted). The determination of whether to exclude evidence is committed to the discretion of the Court. *See id.* at 749.

The portion of the report which Stryker seeks to exclude does not solely "contradict or rebut" evidence raised in Stryker's rebuttal report. (D.I. 32, ¶ 11a; D.I. 86, ¶ 6a). Thus, I agree with Stryker that Dr. Mody's disclosure of damages figures for the specimen collection manifolds is untimely. Turning to the *Pennypack* factors, Dr. Mody's opinion is undeniably important given the amount of damages sought, which weighs against excluding the evidence. There is little prejudice or surprise to Stryker, however, as Stryker's own expert, Dr. Vellturo, included those manifolds in his own damages calculations. To the extent there is any prejudice,

39

that prejudice may be cured by permitting Stryker to file a sur-reply report. It does not appear that there was any bad faith in the belated disclosure. Therefore, Dr. Mody's opinions will not be excluded under the *Pennypack* factors.

Additionally, I determine that Dr. Mody's opinions on specification collection manifolds are not legally flawed or unreliable. She applies the same methodology as she does for the other manifolds that Stryker sells. To the extent that Stryker disputes her analysis, that is a weight issue appropriately dealt with on cross examination. Therefore, I deny Stryker's motion to exclude Dr. Mody's analysis, but grant Stryker's request to provide a sur-reply report.

### 4. Stryker's Motion to Exclude Mr. Lentz's Opinions

Stryker moves to exclude the following opinions of Mr. Lentz: (1) Zimmer communications show that Zimmer was reasonable with respect to the '428 patent; (2) opinions on the state of mind and intent of various individuals; (3) technical opinions; (4) opinions about Stryker's alleged behavior regarding the '920 patent; and (5) explanation of standard practices that are not applicable to Zimmer. (D.I. 328 at 3).

### a. Opinions of Counsel

Stryker moves to exclude Mr. Lentz's opinions relying on four opinions of counsel on other Stryker patents and non-accused Zimmer products as irrelevant to willfulness. (D.I. 328 at 14). Zimmer contends that Mr. Lentz's opinions merely opine on "corporate practice from the perspective of an in-house patent attorney" and provide context for the factfinder to determine the issue of intent. (D.I. 353 at 15-16).

I do not believe this issue is appropriately addressed under *Daubert*. The parties appear to be disputing the relevance of the opinions of counsel and Zimmer's course of conduct before the '428 patent issued. (*See* D.I. 328 at 15 ("[a]n opinion of counsel . . . is not relevant"); D.I.

353 at 16 ("pre-patent issuance conduct . . . is relevant")). This is not a *Daubert* inquiry. To the extent that these issues are relevant, Mr. Lentz's opinions provide appropriate expert testimony to contextualize Zimmer's actions for the purposes of willful infringement. Therefore, Stryker's motion is denied as to Mr. Lentz's opinions regarding the opinion of counsel documents.

### b. State of Mind Opinions

Stryker moves to exclude Mr. Lentz's opinions regarding the filing of the certificate of correction for the '920 patent as improper testimony on state of mind.[12] (D.I. 328 at 16). Zimmer contends that Mr. Lentz's opinion merely sets out the fact that the declarations were signed subject to penalties and ethical obligations, as well as the standard by which the Patent Office reviews the petition. (D.I. 353 at 17).

I find that the majority of the testimony Stryker seeks to exclude is permissible expert opinion testimony regarding standards which are helpful to the factfinder in evaluating the behavior of Zimmer's patent prosecution counsel. However, Mr. Lentz does improperly opine on state of mind in ¶ 84 of his report. Specifically, I will exclude the statement, "If Mr. Johnston had realized his mistake, he almost certainly would have corrected it (especially given that he realistically had nothing to gain by not correcting it). . . ." as this statement is clear improper testimony on state of mind and intent.

### c. Technical Opinions

Stryker contends that Mr. Lentz, despite not being designated as a technical expert, repeatedly offers technical opinions throughout his report. (D.I. 328 at 18). Zimmer argues that Mr. Lentz has not offered technical opinions, but rather an opinion on "how companies analyze and clear patents when designing and releasing products." (D.I. 353 at 18).

---

[12] I do not understand Mr. Lentz to be a witness before the jury at the '920 trial.

The paragraphs that Stryker seeks to exclude contain what appears to be Mr. Lentz's recitation of what Zimmer's attorneys understood at the time. However, the paragraphs also include statements by Mr. Lentz that purport to testify on a technical understanding of the '428 patent family and the differences between the patents. These statements are impermissible. *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364-65 (Fed. Cir. 2008) ("Allowing a patent law expert without any technical expertise to testify on the issues of infringement and validity amounts to nothing more than advocacy from the witness stand."). Thus, to the extent Mr. Lentz purports to provide his own opinion of technological differences, his testimony and opinion is excluded.

### d. Opinion of Stryker's Actions

Stryker contends that Mr. Lentz's opinions regarding Stryker's prior willful infringement should be excluded as irrelevant and unhelpful to the trier of fact. (D.I. 328 at 19). While Zimmer does not dispute the irrelevancy of these opinions, it argues that Stryker's own expert, Mr. Sterne, offers an opinion that Zimmer's prior willful infringement of unrelated patents is relevant to Zimmer's alleged willful infringement of the '428 patent. (D.I. 353 at 19). I determine neither opinion is relevant or helpful to the trier of fact and exclude both experts' opinions on previous actions in regards to unrelated patents.

### e. Explanation of Standard Practices

Stryker contends that Mr. Lentz's explanation of standard practices will not assist the factfinder and therefore should be excluded under Rule 702. (D.I. 328 at 19-20). Zimmer argues that Mr. Lentz provides an opinion on customary behavior which will help the jury to evaluate Zimmer's behavior regarding the '428 patent. (D.I. 353 at 20).

Stryker asserts that Mr. Lentz's testimony is both irrelevant and meant to confuse the jury because he provides testimony about standard practices but does not opine on whether Zimmer followed those internal procedures. (D.I. 328 at 20). To the extent Mr. Lentz's opinions may give the jury a frame of reference upon which to base its conclusion about Zimmer's behavior, his opinions are relevant. Therefore, Stryker's motion is denied as to these paragraphs.

### 5. Stryker's Motion to Exclude and Strike Opinions of Mr. Meyst

Stryker asks the Court to exclude Mr. Meyst's opinions regarding noninfringing alternatives and to strike his untimely doctrine of equivalents opinion offered on reply. (D.I. 324 at 2).

#### a. Noninfringing Alternatives

Stryker asserts that Mr. Meyst's opinion regarding noninfringing alternatives should be excluded as contrary to law. (D.I. 324 at 4). Stryker asserts that Mr. Meyst "wrongly assessed [noninfringing alternatives] in view of the allegedly infringing products" instead of Zimmer's products. (D.I. 324 at 5). Zimmer alleges that Mr. Meyst "analyzed whether Stryker's proposed noninfringing substitutes had the features demanded by customers and were acceptable alternatives to the system claimed in the '920 patent" and therefore his opinion should not be excluded. (D.I. 355 at 2).

"To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). A patentee may show causation by either establishing a two-supplier market, *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1125 (Fed. Cir. 2003), or the absence of noninfringing alternatives in the market. To establish the absence of noninfringing alternatives, "[t]he correct inquiry . . . is whether a non-infringing

alternative would be acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). Zimmer asserts that *Presidio* is inapposite as Mr. Meyst's analysis reflects the two-supplier market for high fluid waste management systems. (D.I. 355 at 2). Yet the parties appear to dispute whether a two-supplier market exists. (D.I. 392 at 2).

Mr. Meyst's opening report (D.I. 331, Ex. 503) and his rebuttal report (*id.* at Ex. 505) discuss noninfringing alternatives by comparing them to the accused infringing product and the patented system. (*Id.* at Ex. 503 ¶¶ 428-32, Ex. 505 ¶¶ 81-99). Mr. Meyst then stated at deposition that he did not compare the purported non-infringing alternatives to Zimmer's products in determining whether the purported alternatives would be acceptable. (D.I. 333, Ex. 1000 at 216:2-10). This is a legally incorrect analysis.

However, Zimmer also notes that Mr. Meyst's opinions "provide Zimmer's damages expert [with] a technical perspective on the substantial features [that differ] between the [non-infringing] Neptune 1 and the [accused infringing] Neptune 2 systems," which underlies her apportionment analysis for reasonable royalties. (D.I. 355 at 3). Therefore, Mr. Meyst will be precluded from offering his opinions (D.I. 331 at Ex. 503 ¶¶ 428-32, Ex. 505 ¶¶ 81-99) for the purposes of noninfringing alternatives because they are unreliable and irrelevant. However, Zimmer's damages expert will not be precluded from relying on these opinions in her apportionment analysis.

### b. Doctrine of Equivalents Opinion

Stryker moves to strike Mr. Meyst's doctrine of equivalents opinion on claims 20 and 35 of the '920 patent as an untimely disclosed new theory. (D.I. 324 at 5-6). Specifically, Stryker asserts that Mr. Meyst's opening report did not allege infringement of claims 20 and 35 under the

doctrine of equivalents. (D.I. 324 at 6). Zimmer argues that Mr. Meyst does not offer a new

opinion on reply, or if he does, that the *Pennypack* factors weigh against exclusion of Mr.

Meyst's opinion. (D.I. 355 at 3-5).

"Plaintiffs should not be permitted to advance a new infringement theory in their reply

report." *HSM Portfolio LLC v. Elpida Mem., Inc.*, 2016 WL 552543, at *2 (D. Del. Feb. 11,

2016) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii); *MobileMedia Ideas, LLC v. Apple, Inc.*, 2012 WL

6019305, at *1 (D. Del. Dec. 3, 2012)). Here, Mr. Meyst did not allege a doctrine of equivalents

theory of infringement for claims 20 and 35 in his opening report. (D.I. 331, Ex. 503 ¶¶ 129-31,

229-31, 319-21, 412-14). After Stryker's expert offered opinions of no infringement (D.I. 334 at

94-97, 122-23), Mr. Meyst included doctrine of equivalents opinions for claims 20 and 35 for the

first time. (D.I. 331, Ex. 505 ¶¶ 32-36, 40, 69-73, 77).

In determining whether to exclude expert testimony, courts consider the *Pennypack*

factors. *See Konstantopoulos*, 112 F.3d at 719. While it is true that Stryker had the opportunity

to depose Mr. Meyst on his infringement theories, I am not convinced that it is sufficient to cure

the prejudice. If Zimmer had timely disclosed this infringement theory, Stryker's expert may

have been able to assert different theories of non-infringement. Additionally, Stryker has alleged

that the untimely disclosure was intentional and in bad faith because Mr. Meyst's opening report

did disclose doctrine of equivalents theories for other asserted claims. (D.I. 324 at 6). While

there seems to be little risk that permitting this theory would disrupt the trial, that by itself does

not overcome the prejudice to Stryker. Therefore, with respect to the new infringement theory

for claims 20 and 35 raised in Mr. Meyst's reply report, Stryker's motion is granted.

## 6. Stryker's Motion to Exclude Opinions of Dr. Layton

Stryker moves to exclude various opinions of Dr. Layton as unreliable, contrary to the Court's claim construction, or untimely. (D.I. 324 at 2).

### a. Obviousness Opinions

First, Stryker moves to exclude "Dr. Layton's opinions alleging that the '428 patent claims are obvious based on the Transposal High Fluid Cart [] used with a 'CL100' or 'CL200' lid are unreliable because he inappropriately relies on irrelevant, insufficient and unreliable documents." (D.I. 324 at 2). Stryker asserts that Dr. Layton relies on unreliable facts and data in his obviousness opinion including exhibits and documents that post-date the priority date and unauthenticated exhibits and documents. (D.I. 324 at 8-11). Zimmer argues that Stryker misrepresents the facts and data Dr. Layton relies on because it fails to acknowledge certain witnesses who are familiar with the Transposal system as sold before the '428 patent's priority date. (D.I. 355 at 8-9). Moreover, Zimmer asserts that the sufficiency of the evidence is the province of the jury and an inappropriate matter for a *Daubert* motion. (*Id.* at 9). Finally, Zimmer asserts that post-priority-date or undated documents may corroborate contemporaneous documentary and physical evidence. (*Id.* at 10).

Dr. Layton relies on a variety of evidence to assert that the Transposal high fluid cart had certain features prior to the critical date. To the extent he relies on evidence that is undated, post-dated, or physical evidence that was possibly modified between the alleged prior sale and the examination by the expert, he has not provided any reliable basis for drawing the inference that the characteristics of the items he examined were present in a product sold prior to the critical date. "This falls short of a reliable opinion based on [Dr. Layton's] scientific, technical or specialized knowledge, as required by Rule 702." *XpertUniverse, Inc. v. Cisco Sys., Inc.*,

2013 WL 1702159, at *1 (D. Del. Feb. 25, 2013). Moreover, "[t]he danger of unfair prejudice of [Dr. Layton's] opinion on this ultimate inference . . . would also substantially outweigh its probative value." *Id.* (citing Fed. R. Evid. 403). However, Dr. Layton may provide his narrower opinions regarding the exhibits he examined and the circumstantial evidence surrounding those exhibits and documents. The ultimate conclusion of whether these characteristics were present in the prior art is properly left for the factfinder to evaluate. *Xpert*, 2013 WL 702159, at *1. Therefore, Stryker's motion is granted as to Dr. Layton's broad opinion that the Transposal high fluid cart sold before the critical date contained features that would make the '428 patent obvious.

### b. Opinions Regarding "Fluid Communications Path"

Stryker moves to exclude Dr. Layton's opinions that the accused products do not a have a "fluid communications path" as contrary to the court's claim construction. (D.I. 324 at 14). Specifically, Stryker attacks Dr. Layton's opinion that "the 'fluid communications path' requires a structure and cannot be a opening or gap." (D.I. 324 at 14). Zimmer argues that Dr. Layton's opinions are not contradictory to the court's claim construction. (D.I. 355 at 12).

I construed the claim term "a fluid communications path from the bore of said first receiver into said first canister" consistent with its plain and ordinary meaning, "a path for conveying fluid from the receiver bore into the first canister". (D.I. 276 at 23). Relying on the doctrine of claim differentiation, I specifically determined that "'path' should be given a broader scope than 'conduit.'" (D.I. 276 at 24). Dr. Layton's opinion is not inconsistent with that construction, nor is it an improper attempt to resurrect Zimmer's conduit argument from the Markman hearing. Therefore, Stryker's motion is denied as to Dr. Layton's opinions on the "fluid communications path" limitation.

### c. Opinions and Statements Regarding "Housing" and "Outlet Opening at the Proximal End"

Stryker moves to exclude Dr. Layton's noninfringement opinions about the "housing" and the "outlet opening at the proximal end [of the housing]" because they are unreliable and based on a misunderstanding of the governing claim construction. (D.I. 324 at 15). Zimmer asserts that Stryker's motion is an attempt to request a construction of the term "housing" and fails to explain why Dr. Layton's opinion should be excluded. (D.I. 355 at 14).

Dr. Layton's opinions are not inconsistent with the governing claim constructions. Dr. Layton does not suggest that the manifold must have a "closed end." While I did not explicitly construe housing to mean "outer enclosure," I determined that "the disputed claims already capture[d] this requirement" and, therefore, I did not need to read Zimmer's proposal into the disputed limitation. (D.I. 276 at 20). Thus, I do not find Dr. Layton's opinions inconsistent with the governing claim constructions. However, to the extent that Dr. Layton suggests that I defined the housing as an outer enclosure, that opinion shall be excluded as contrary to what I actually held.

### d. Reply Opinion Relying on Blake Reference

Stryker moves to strike Dr. Layton's reply report opinion that the Blake[13] reference should be added in the obviousness combination for claim 1. (D.I. 324 at 19). Specifically, Stryker contends that Dr. Layton never relied on a combination with Blake for claim 1 nor explained how Blake satisfied the specific elements of claim 1 in his opening report. (D.I. 324 at 20). Zimmer argues, "Neither the Blake reference nor the combination was new or a surprise to Stryker," because Dr. Layton "explained that claim 4, which depends from claim 1, would have

---

[13] U.S. Patent No. 4,737,148.

been obvious based on the Transposal High Fluid Cart in view of Adahan and Blake." (D.I. 355 at 18). Zimmer asserts that because claim 4 depends from claim 1, Dr. Layton necessarily applied that combination to claim 1 as well.

The *Pennypack* factors do not favor exclusion of Dr. Layton's reply opinions. The Blake reference was disclosed in Dr. Layton's initial report. It was used in an obviousness combination for a dependent claim of claim 1, which inherently implicates the independent claim's validity. *See, e.g.*, *Callaway Gold Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed Cir. 2009). Stryker was able to depose Dr. Layton on this reply opinion, and there does not appear to be any bad faith action by Zimmer. Moreover, to the extent there is any prejudice to Stryker, I find that this prejudice can be remedied by allowing Stryker's expert to file a supplemental report addressing the Blake combination for claim 1 of the '428 patent. Therefore, Stryker's motion to strike is denied.

## IV.  CONCLUSION

For the foregoing reasons, the motions are resolved as follows:

1. Zimmer's motion for partial summary judgment as to priority date (D.I. 309) is GRANTED;

2. Zimmer's motion for partial summary judgment of no invalidity for double patenting (D.I. 310) is GRANTED;

3. Zimmer's motion for partial summary judgment of no invalidity for recapture (D.I. 311) is GRANTED;

4. Zimmer's motion for partial summary judgment of no intervening rights defense (D.I. 312) is DENIED;

49

5. Zimmer's motion for partial summary judgment of no infringement (D.I. 313) is DENIED;

6. Stryker's motion for summary judgment (D.I. 316) is DENIED;

7. Stryker's cross-motion for summary judgment (D.I. 356) is DENIED;

8. Stryker's supplemental motion for summary judgment (D.I. 411) is DENIED;

9. Zimmer's motion to exclude the testimony of Mr. Sterne (D.I. 317) is GRANTED as to his opinions evaluating Zimmer's reliance on opinions of counsel and ¶ 129 of his report and DENIED as to all else;

10. Zimmer's motion to exclude the testimony of Dr. Vellturo (D.I. 321) is GRANTED as to the Bemis License and DENIED as to all else;

11. Stryker's Motion to exclude and strike opinions and testimony of Dr. Mody and Mr. Lentz (D.I. 327) is DENIED as to Dr. Mody's opinions and Mr. Lentz's opinions on the opinions of counsel and standard practices, and GRANTED as to Mr. Lentz's technical opinions, the above-identified statement in his report, and his opinion of Stryker's previous actions;

12. Stryker's motion to exclude and strike opinions and testimony of Dr. Layton and Mr. Meyst (D.I. 322) is GRANTED as to Mr. Meyst's doctrine of equivalents opinion for claims 20 and 35, GRANTED-IN-PART as to Dr. Layton's opinion as to the features of the prior art sales and Mr. Meyst's noninfringing alternatives opinion, and DENIED as to Dr. Layton's opinions on noninfringement and the Blake reference.

An accompanying order will be entered.